Smith vs. Finch et al.

SAMUEL SMITH, Respondent.

*vs.*

JONATHAN FINCH, GEORGE FINCH, and HENRY WILLIAMS, Appellants.

| 8 | 245 |
| 74 | 185 |
| 8 | 245 |
| 77 | 196 |
| 8 | 245 |
| 82 | 190 |
| 8 | 245 |
| 91 | 352 |

APPEAL FROM CIRCUIT COURT, WAUKESHA COUNTY.

A bill for specific performance cannot be maintained where the contract to purchase is verbal, and the buyer has sent to the vendor part of the purchase money, and notes and mortgage to secure the balance ; unless he has also been let into possession of the premises.

Sections 8 and 10 of chap. 75, R. S., 1849, neither abridge nor add to the powers of courts of chancery, in relation to verbal contracts concerning lands ; but leave the courts in the same condition as before the passage of the act.

S. verbally agreed with F. for the purchase of lands for $1125, and on S. sending $525 and three notes and a mortgage on the land for the balance of the purchase money, F. was to make a deed of the land to S. ; S. sent the money, notes and mortgage to F., according to contract, and F. refused to make the deed ; held that a suit for specific performance would not lie, as a court of law could give S. a complete remedy.

A purchaser by verbal contract being let into possession in confidence that the vendor would have performed on his part, is placed in a situation where gross fraud might be successfully practiced upon him, unless the agreement is fully performed. In such a case an action for specific performance can be maintained.

The bill of complaint is filed for a specific performance of a parol agreement of sale of the E ½ NW F'l ¼, and E ½ of E. ½ of SW ¼, Sec. 13, T. 8, N. R. 18 E., containing about 106 acres of land situated in the county of Waukesha, made between the complainant, Samuel Smith, and the defendant, Jonathan Finch, the attorney in fact of George Finch. The complainant alleges that in March, 1853, he being a resident of Merton,

it was agreed between the defendant, Jonathan Finch and himself, at Oak Grove, Dodge county, that he should purchase the lands for $1125 ; that the complainant, as soon as he conveniently could after his return to Merton, should send by one H. B. Goodrich, who carried the mail between those points, to the defendant Jonathan Finch, the sum of $525, and also complainant's three notes, each for $200, payable respectively in one, two, and three years, with ten per cent. interest, together with a mortgage on the premises to secure the notes, to be made and executed by the complainant; and upon receipt thereof, the defendant Jonathan Finch, as attorney in fact of George Finch, would execute a sufficient deed of conveyance and send the same by Goodrich to the complainant; and it was further agreed that the complainant should be immediately let into possession of the premises.

That pursuant to the agreement the complainant gave $525, his three promissory notes and a mortgage on the premises to secure the same to H. B. Goodrich, and that Goodrich on the 31st March, 1853, delivered them to Jonathan Finch at Oak Grove. That Finch on examination, pretended that the mortgage was not on the premises in question, gave Goodrich a description of the lands as in this bill described, with a request that the complainant would execute a new mortgage, and that the complainant did so and gave the same to Goodrich, who on the 17th of April, 1853, delivered it to the defendant Jonathan Finch. That he has not executed, and refuses to execute, a deed of the lands.

The bill is sworn to and asks for answer under oath.

The sworn answer of Jonathan Finch admits the ownership of the lands, his attorneyship, the agreement to sell for the price and on the terms mentioned in the bill. Denies that the complainant made and executed the notes and mortgages as agreed between them, or that the same with $525, on 31st of March, 1853, were delivered to him by Goodrich, or

at any other time, or that the same or any or either of them, were then or at any time received by him.

Avers, that the agreement was that by the next mail, after complainant's return to Merton, he should send to William Lander, his three notes and mortgage of the tenor mentioned in the bill of complaint, with $525, to be received by Lander as the agent of the complainant, and that the defendant, upon receipt thereof from Lander should deliver to Lander a deed of the premises. That on the 31st March, 1853, H. B. Goodrich delivered to one Bowers, pretending to be in the employment of Lander, a package containing three notes payable to Jonathan Finch or bearer, each for $200, and interest at ten per cent., pabable in one, two and three years, together with a mortgage to secure the same, not upon the premises agreed to be sold, but upon other lands, and the sum of $525 in money.

That upon inspecting the mortgage, on account of the mistake, the defendant declined to receive the notes, mortgage and money, and did not receive the same, but that the same were kept and retained by Bowers.

That this defendant stated to said Bowers the correct description of said lands, and this defendant believes he sent the same to the complainant. That thereupon the complainant made a new mortgage to be delivered to said Lander or Bowers, which was handed by said Goodrich to this defendant with the request that he would give it to said Bowers. That this defendant, in the absence of Mr. Bowers and Mr. Lander, gave it to Mrs. Lander. That this defendant never accepted said second mortgage, and that it never was under his control. That Bowers kept and retained the notes and money, and never paid or delivered the same to this defendant, and between the 31st March and 7th April 1853, absconded with the same.

Answer of George Finch the same in substance.

On the trial of the case considerable testimony was given which shows that the verbal contract was made; the $525 paid, and the mortgage and notes made by Smith for the balance of the purchase money, and sent to Jonathan Finch; but as the decision of the court turns entirely on the question of the delivery of the possession; and there being but one witness who spoke on that point, the evidence will be omitted, except the following: Joseph Smith, the brother of the plaintiff, who was present and heard the bargain, said: "It was agreed my brother should have possession of the premises immediately."

The decree of the circuit court was entered March 22, 1855, as follows:

It appearing that the complainant has paid Jonathan Finch $522 59, in full of cash payment agreed upon between the parties, and has delivered the notes and mortgage for the security of the balance of the purchase money of the premises described in the bill, therefore it is adjudged and decreed that the agreement of sale be specifically performed on the part of Jonathan Finch. That the defendant, George Finch, by his attorney in fact, execute and deliver to the complainant within thirty days from the date hereof, a good and sufficient conveyance in fee of said premises. Also, that Jonathan Finch within the same time, make and deliver to the complainant his bond in the penal sum of $1,000, to indemnify him from dower right of the wife of George Finch. and that he have leave to withdraw from the files of this court the mortgage and notes dated 29th March, 1853, executed to secure the purchase money of said premises, to hold, use, dispose of or collect. That until the execution of said deed, the title to George Finch is passed. Defendant pay the costs.

From this decree the defendants appealed.

*J. E. Arnold* for the appellants.

1. The contract sought to be enforced is within the statute of frauds.

2. There is not averred or proven any such part performance of the contract as will take it out of the operation of the statute, or give the court any jurisdiction to enforce it. Rev. Statutes, 388; 2d Story's Eq. Jur., §§ 759 to 766; Sugden on Vendors, chap. 3, § 3, pp. 107 to 112; Newland on contracts, chap. 10, pp. 187 to 191; *Clinan vs. Cooke,* 1 Sch. & Lefr., 40, 41, 42; *O'Herlihy vs. Hedges,* same 129; *Jackson's assignees vs. Cutright,* 5 Mumf. Rep., 318; 9th Vesey, Rep., 382.

There was no change of possession from the vendor to the vendee, nor any improvements made by him. The payment of purchase money, even if accepted, would not take the case out of the statute. Nothing is part performance that does not put the party into a situation that is a fraud upon him if the agreement be not performed.

5. The statute has provided that in another case, viz: with respect to goods, part payment shall operate as part performance; and the courts have, therefore, considered this as excluding agreements for lands: because it is to be inferred that when the legislature said it should bind in case of goods, and were silent as to the case of lands, they meant that it should not bind in the case of lands.

*Billinghurst & Baird* for the respondent, urged the fact of the payment of purchase money by the plaintiff.

*By the Court,* WHITON, J. Admitting that the money and the mortgage were sent by the complainant to Jonathan Finch, as the agent of George Finch, and that this part of the verbal agreement was performed by the complainant, still we are of

opinion that he cannot enforce a specific enformance of it.

Our statute (Rev. Stat., chap. 75, § 8) provides that every contract for the sale of any lands or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made. Section 10 of the same chapter provides that nothing in that chapter contained shall be construed to abridge the powers of courts of equity to compel the specific performance of agreements in cases of part performance of such agreements.

These provisions, as we understand them, leave courts of equity in this State the power to enforce the specific performance of verbal agreements for the sale of land, in cases where such courts have been accustomed to exercise this power. Section 10, above referred to, does not, we think, give the power to enforce such contracts specifically in all cases where there has been a part performance.   By its terms it gives no power, but seems to have been introduced for the purpose of preventing such a construction from being given to section eight as would prevent courts of equity from enforcing these contracts in all cases.   It provides that the power of courts of equity shall not be abridged in respect to these contracts, but it does not give the courts any power which they did not possess before.

We are thus left by our statutes with the same power over these contracts that courts of equity have heretofore exercised.

The testimony introduced at the trial does not establish the material fact that the complainant went into possession of the land which the defendant, George Finch, verbally agreed to convey, and in the absence of proof of that fact, we do not see how the complainant can specifically enforce the contract. (*Clinan vs. Cook*, 1st Sch. & Lefr., Story's Eq. Juris., §§ 759, 760.) The complainant has received no injury from the defendant, George Finch, in consequence of his refusal

to convey the land for which a court of law cannot give him a complete remedy; and when this is the case, courts of equity will not enforce specifically contracts of this description.

It is only in cases where the defendant would be enabled to practice a fraud upon the complainant unless the contract is specifically executed, that a court of equity will interfere. Story's Eq., § 761; *Savage vs. Foster*, 9 Wend., 37; 18 Conn. R., 222. If the complainant had gone into possession of the land he would have been liable as a trespasser, if the final agreement should be held to be void under the statute, and it would have been most unjust to subject him to an action of trespass and also a suit to account for profits when he had gone into possession of the premises in the confidence that the bargainer would have performed his contract. *Tilton vs. Tilton*, 9 N. H. 386. In such a case the bargainee being in possession, is placed in a situation where a gross fraud might be successfully practiced. But no such consequences can arise in this case.

It follows from the views we have expressed that the decree of the circuit court in this case must be reversed, and the bill of complaint dismissed.