McWHINNE, Respondent, vs. MARTIN, imp., Appellant.

*May 22 — June 21, 1890.*

(*1, 2*) *Vendor and purchaser of land: Oral contract: Statute of frauds: Part performance: Authority of agent: Ratification: Estoppel: Purchaser with notice.* (*3*) *Amendment of pleading: Discretion.*

1. Payment of any considerable part of the purchase price, and the vendee's entry into possession and making of improvements, constitute such a part performance of an oral contract for the sale of land as will take it out of the statute of frauds and justify the enforcement of specific performance.

2. The defendant B., a tenant in common of land and authorized by his co-tenants to sell the same, employed brokers to negotiate a sale, authorizing them to get offers and report them to him. Afterwards he wrote to the brokers that he wished to sell, and would take $450 for the land. The brokers showed this letter to the plaintiff, who accepted the offer, paid $50 down and deposited the balance in a bank to await a conveyance, and went into possession of the land and made improvements thereon. The brokers notified B. that they had made this sale, but he neglected for more than two months either to affirm or disaffirm the contract, and afterwards sold and, with his co-tenants, conveyed the land to the defendant M., who had knowledge of all the facts. *Held,* that there was a contract to convey the land to the plaintiff, which was binding upon both defendants.

3. Only in case of a clear abuse of discretion will this court interfere with the allowance by the trial court of an amendment to the complaint to make it conform to the evidence.

APPEAL from the Circuit Court for *Sauk* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an action in equity brought against *Charles E. Martin* and Walter L. Blossom to compel the specific performance of an alleged contract for the sale and conveyance of three forty-acre tracts of land lying on the shore of Devil's lake, in this state. The facts, as shown by the evidence, are substantially as follows:

The lands in controversy were at the date of the alleged

contract owned as tenants in common in fee by said Walter
L. Blossom and his two sisters, Mrs. Harmount and May C.
Blossom.   Walter L. Blossom was the duly-appointed agent
of his said sisters, with full power to manage and sell said
lands as he thought best.   The three forty-acre tracts in ques-
tion were a part of the real estate owned in common by said
Blossom and his sisters in the vicinity of Devil's lake, in
this state.   All the lands owned by them as such tenants in
common in the vicinity of said lake were sixteen forty-acre
tracts.   These lands appear to have had little value.   The
evidence discloses that previous to February, 1888, the said
Walter L. Blossom, on his own behalf and on behalf of his
sisters, had made efforts to sell said lands and the whole of
them, and for that purpose said Blossom had employed one
Mr. Slye, living in the vicinity of such lands, to make sale
thereof.   Mr. Slye had up to that time found no purchasers
for said lands or any part thereof.   Walter L. Blossom
resided in Spokane Falls, Washington Territory.   In Febru-
ary, 1888, Mr. Blossom came to Baraboo, in the vicinity of
said lands, for the purpose of making sale thereof if he could
do so.   He failed, however, to make any sales, and then
placed the lands in the hands of Emery & Shults, real-estate
agents at Baraboo, for sale.   The evidence tends to show
that, before leaving the lands in the hands of said agents for
sale, Mr. Blossom endeavored to make sales of the same
himself, but did not succeed in so doing.

The evidence shows that Mr. Blossom left with said
agents prices at which sales might be made by said agents,
but gave to said agents no written power of attorney au-
thorizing them to convey said lands or any part of them to
purchasers.   In the price-list furnished said agents, the
three forty-acre tracts about which this controversy arises
were valued together at $500.   After the lands were left
with Emery & Shults for sale, they placed notices on or
near the lands stating that the lands were " for sale by

McWhinne vs. Martin.

D. S. Emery, Baraboo, Wisconsin." These notices were given with the approval and sanction of Walter L. Blossom. After making this arrangement with Emery & Shults, Mr. Blossom returned to Spokane Falls. Emery & Shults immediately made efforts to sell said lands, but were unable to make any sales at the prices fixed by Blossom. On March 9, 1888, said agents wrote to Mr. Blossom, and addressed the letter to him at Milwaukee, stating what had been done, and giving a description of the lands as they had found them from examination, but reporting no sales. On the 14th of March, 1888, the agents wrote another letter addressed to Blossom at Spokane Falls, in which they stated they had had an offer from a Mr. Crouch for the three forty-acre tracts of $300, and that Mr. Kirk would pay $10 more for them in order to keep control of the south end of the lake, although Mr. Kirk said it was more than they were worth. On the 21st of March, Mr. Blossom answered these letters by a letter dated at Spokane Falls. In this letter Mr. Blossom says, " I don't think $300 enough for the three forties; " that he considers the forty on the lake worth $500 to any person who wished to build on the lake; and he says: " I will throw in the other two forties to any one wishing the property. I will sell the property, and take $450 for the three forties, which I think you will be able to get by waiting until summer, if not now. Hoping to hear that you will succeed in getting this figure for it soon, or very nearly it, I am," etc. On the 28th of March, 1888, Emery & Shults again wrote to Mr. Blossom. In this letter they say: " I have seen *Mr. McWhinne,* and I think I can get about $400 for the three forties south of the lake; " and requesting a deed to be forwarded for that tract, leaving the name of the purchaser in blank, and stating that $400 would be a good offer for it. This letter also asked Mr. Blossom to fix a price on the entire sixteen forties, stating that they had a man who wanted the least price on all the forties, and saying: " I think he will give about $900."

On the 7th of April, Emery again writes to Mr. Blossom, stating that he had written several times about his property and had heard nothing from him; also stating that he had a man who wanted to buy the whole, and again asking him to fix a price on the whole and send a deed for the whole to the Bank of Baraboo, to save time. Letters were also written by Emery & Shults to Blossom on April 11th and 19th, in regard to the sale of these lands, stating what offers they had for the lands, and requesting him to fix a price for the whole of the lands; and on April 30th, the two following letters were written: "[First letter.] Baraboo, Wis., April 30, 1888. W. L. Blossom, Spokane Falls, Washington Ty.— Dear Sir: I have written you several letters in regard to your landed property in our vicinity, and as yet have rec. but one letter. I understand that you have written Mr. Slye about your taxes. I have an offer for all your land. *Mr. Charles Martin* says he will give you $1,000, and if I remember aright that is what you wanted. What do you say in reply? Very truly, EMERY & SHULTS." "[Second letter.] Baraboo, Wis., April 30, 1888. W. L. Blossom, Spokane Falls, Washington Ty.— Dear Sir: *Mr. E. McWhinne* has bought your lake property; that is, the three forties south of the lake. We have accepted $50 on the same. This is $125 more than any of the parties at the lake would give. Very truly, EMERY & SHULTS." Witness thinks the letter first above mentioned was written first.

Again, on May 21, 1888, Emery & Shults wrote to Blossom the following letter: "Baraboo, May 21, 1888. W. L. Blossom, Spokane Falls, Washington Ty.— Dear Sir: I wrote you some time ago concerning the sale of the three forty-acre pieces south of lake to *E. McWhinne* for $450, your price, and that I had rec. on same $50 as bind money. The balance, viz., $400, is deposited in bank. And I also wrote that *Mr. Charles Martin* had made an offer of $1,000

for all of the land you own, and have rec. no answer. If desired, and you wish, he (*Martin*) will deed to *Mc Whinne*. Please act on this matter. Send deed to bank (*Mc Whinne*). Very truly, EMERY & SHULTS."

Emery again wrote to Blossom on June 8th. The following is a copy of that letter: " Baraboo, Wis., June 8, 1888. Mr. W. L. Blossom — Dear Sir: You do not seem to be a very prompt man to do business with. It has been nearly three months since I sold your lake property to *E. Mc Whinne*, viz., the east half of the northwest ¼, and the northeast ¼ of the southwest ¼, of sec. 25–11–6, for $450 cash. *Mr. Mc Whinne* has taken possession of same, and intends to hold it. I have $50 in my hands, and the balance is deposited in the Bank of Baraboo, Wis., awaiting deed. Very truly, D. S. EMERY."

No answer to these several letters was sent by Blossom until the 7th of July, 1888. On July 7th, 1888, Mr. Blossom wrote the following letter to Emery & Shults: " Spokane Falls, W. T., July 7, 1888. Emery & Shults, Baraboo, Wis.— Gentlemen: I owe you more than an apology for not answering your valued favors before, as you have shown such a business as well as kindly interest in the handling of our property in your vicinity. In regard to the lake property which *Mr. Mc Whinne* wants, will let him have it in case I cannot sell the whole sixteen forties in a lump, which I much prefer to do. If you can sell them so you can net me twelve hundred dollars, I think there would be good money to the persons buying the land at the figures named. I have just received a letter from Mr. Crouch, asking for particulars in regard to the lands, and will answer him, and refer him to you for any details in the matter. Please see *Mr. Martin*, and perhaps you can sell the whole to him, and, if he does not want it, think you will have no difficulty in finding another customer for the property at that figure. Yours truly, W. L. Blossom."

On the 13th of July, 1888, Emery & Shults wrote the following letter to Mr. Blossom: "Baraboo, July 13, 1888. Mr. W. L. Blossom, Spokane Falls — Dear Sir: We did rec. a letter from you on the 10th inst. It seems to us that one ought to be a little more prompt in business transactions. You are morally bound to let *Mc Whinne* have the lake property, but I suppose you can do as you please. I have seen *Mr. Martin*, and he has agreed to take you at your offer, viz., $1,200 net to you. What he wants of it is more than I can tell. He certainly can't get his money out of it again, that is, if he expects to sell it. He may trade it in, in that way get something out of it. *Martin* demands an abstract of the title of all the lands, and when it is all right your money is ready for you at the bank of Baraboo. Now, Mr. Blossom, I wish you would be a little more prompt in your business with me than heretofore. There isn't much satisfaction in doing business in a way that one isn't used to. Mr. Crouch called on me, and he thinks he can't stand the pressure. Very truly, EMERY & SHULTS. Will make deed, and send you in a few days. Send on your order for abstract. D. S. EMERY."

On the 18th of July, 1888, Emery & Shults wrote again to Mr. Blossom. The following is a copy of that letter: " Baraboo, Wis., July 18th, 1888. W. L. Blossom, Spokane Falls — Dear Sir: I wrote you on the 13th inst., stating that *Mr. Martin* would take your place. I herewith send deed for same. Mr. Crouch informs me that he will take the place providing you take $200 down, and the balance on time at seven per cent. interest until paid. There is nothing in this offer. He is one of these hangers on. I never have been able to make a single deal with him since I have been in the real estate biz. He (Crouch) has often told me that he would take different pieces, but never succeeded in closing a deal yet. I have lost all confidence in what he says. He wants the land for $1,200, you to pay

commissions. Hoping that we will be able to bring this matter to a close soon, we remain, very truly, Eᴍᴇʀʏ & Sʜᴜʟᴛs, Baraboo, Wis."

On July 20, 1888, Mr. Blossom wrote to Emery & Shults the following letter: " Spokane Falls, July 20, 1888. Messrs. Emery & Shults — Gentlemen:  Your favor of the 13th inst. is just at hand, and I have executed deed to all lands about Devil's Lake to *Mr. Charles Martin,* and forwarded same to a sister who lives in Detroit for her signature. *Mr. Martin* can easily satisfy himself of the title to our property by an examination of the records, as there have been very few transfers; but, in case he desires an abstract, please have one made, and present voucher for same, together with check for balance to make twelve hundred dollars, and the cashier of the Bank of Baraboo will deliver the deed to you. My sister will forward the deed direct to the bank, from Detroit, and it should not be more than three or four days in arriving. Yours truly, Wᴀʟᴛᴇʀ L. Bʟᴏssᴏᴍ."

As the result of this correspondence, Blossom and the other owners conveyed all the lands to the defendant *Martin* for the sum of $1,200 cash.  Upon the trial, the evidence showed conclusively that *Mr. Martin* had full knowledge of all the facts in relation to the contract of sale of the three forties by Emery & Shults, claiming to be agents of the Blossoms, before he purchased said lands from the said Blossoms.

The evidence shows that after the contract made by *McWhinne* for the purchase of said lands from Emery & Shults, as agents of the Blossoms, he paid $50 on the purchase, and deposited the balance in the bank to await the receipt of the deed.  And it also shows that, immediately after making the agreement with said agents, *McWhinne* entered into the possession of the lands described, and made improvements thereon; and the evidence tends to

show that such possession was known to the agents, and also to the said defendant *Martin* before he purchased said lands of the Blossoms. The evidence also shows that on the 8th of June, 1888, D. S. Emery, as agent of the Blossoms, made a contract in writing with said *E. McWhinne* for the sale of said three forties of land. The following is a copy of said contract:

"This agreement made this 8th day of June, 1888, between W. L. Blossom, of Spokane Falls, Washington Territory, party of the first part, *E. McWhinne*, of Baraboo, Sauk county, Wisconsin, party of the second part, witnesseth that said first party has sold to said second party, and said second party has purchased, the east half of the northwest quarter, and the northeast quarter of the southwest quarter, of section number twenty-five (25), in township number eleven (11) north, of range number six (6) east, in Sauk county, for the sum of four hundred and fifty dollars, to be paid as follows: $50 down, receipt of which is hereby acknowledged by said first party, and the balance on receipt of a deed of warranty of said land, conveying a perfect title thereto to said second party, free and clear from all liens and incumbrances; such deed to be ready for delivery at the Bank of Baraboo, in Baraboo, Wisconsin, as soon as the same can be procured from Spokane Falls, Washington Territory, where said first party now is, not later than August 1st next. [Signed] W. L. BLOSSOM. Per D. S. EMERY, Agent. E. McWHINNE."

After hearing all the evidence in the case, the learned circuit judge made the following findings of fact, viz.:

"That on the 21st day of March, 1888, Emery & Shults, real-estate agents of Baraboo, Wisconsin, were the agents of said Walter L. Blossom, of Spokane Falls, Washington Territory, for the purpose of negotiating as to a sale of the lands of said Blossom described in the complaint, authorized to get offers for said lands, and report the same to

said Blossom; and that prior thereto, and while such agents as aforesaid, they had obtained offers for said land and reported the same to said Blossom. That on the said 21st day of March said Blossom wrote to D. S. Emery, one of said agents, a letter in regard to and referring to said land, in which he states: 'I wish to sell the property, and will take four hundred and fifty dollars for the three forties, which I think you will be able to get by waiting until summer, if not now. Hoping to hear that you will succeed in getting this figure for it soon, or very nearly it, I am yours very truly, W. L. Blossom.'

"That on the 27th day of March, 1888, said agent Emery showed or read said letter to the plaintiff, and said plaintiff at once accepted the offer therein contained, paid fifty dollars towards the purchase price of said lands, deposited the balance in the Bank of Baraboo, to be paid to said Blossom on receipt of the conveyance, and went into possession of said property, and made the improvements mentioned in the complaint.

"That on the 30th day of April said agents, Emery & Shults, notified said Blossom of the said acceptance of the said offer, in a letter written on said day, wherein they say: '*Mr. Mc Whinne* has bought your lake property, that is, the three forties south of the lake. We have accepted $50 on same.' That inclosed in said letter was a deed of said property to be executed by said Blossom, with the consideration therefor filled in, being $450, to *Mc Whinne.*

"That on the 21st day of May said agents, Emery & Shults, wrote to said Blossom a letter in which they state: 'I wrote you some time ago concerning the sale of the three forty-acre pieces south of lake to *E. Mc Whinne* for $450, your price, and that I had rec. on same $50, as bind money. The balance, viz., $400, is deposited in bank. And I also wrote that *Mr. Charles Martin* had made an offer of $1,000 for all of the land you own, and have rec. no answer. If de-

sired, and you wish, he (*Martin*) will deed to *Mc Whinne*. Please act on this matter.   Send *Mc Whinne* deed to bank.'

" That on the 8th day of June, 1888, said Emery, acting as agent for said Blossom, entered into the written contract mentioned and set out in the complaint, with said plaintiff; and on the same day said Emery wrote to said Blossom a letter, in which he states: ' It has been nearly three months since I sold your lake property to *E. Mc Whinne*, viz., the east $\frac{1}{2}$ of the northwest $\frac{1}{4}$, and the northeast $\frac{1}{4}$ of the southwest $\frac{1}{4}$, of sec. 25, T. 11, R. 6, for $450 cash.  *Mr. Mc Whinne* has taken possession of same, and intends to hold it.   I have $50 in my hands, and the balance is deposited in the Bank of Baraboo, awaiting deed.'

" That said Blossom received all of said letters in due course of mail, but failed and neglected to make any reply thereto, or to send any communication whatever to said plaintiff or to said agents, until the 7th day of July, 1888, when he wrote to said agents a letter, in which he does not in any manner repudiate their authority to act for him, or direct them to rescind their said sale to said plaintiff, and that he never has in any manner notified the plaintiff of any rescission of said contract or repudiation of said sale.

" That said letter of Blossom's dated March 21st, the showing of it by said Emery to the plaintiff, the acceptance of the offer therein contained by the plaintiff, the paying of some portion of the purchase money by the plaintiff, the letters of Emery & Shults above mentioned, the taking possession by the plaintiff of the property and making improvements thereon, and the depositing of the balance of the purchase money by the plaintiff, and the delay of Blossom after being informed what Emery as his agent had done, together with all the facts and circumstances proven, constitute a contract binding on Blossom, and obligating him to convey said lands to the plaintiff.

" That the written contract of June 8th neither added

anything to, nor took anything away from, the binding force of the contract above mentioned.

" That, prior to the acceptance by the defendant *Martin* of the conveyance of the land described in the complaint to him, the defendant *Martin* had notice of all the facts above mentioned."

The court, upon these findings, adjudged that the plaintiff was entitled to the relief demanded in his complaint, and judgment was entered accordingly, from which judgment the defendant *Martin* appealed to this court. Exceptions were taken by the said defendant *Martin* to all the findings of fact separately. On the trial the learned circuit judge permitted the plaintiff to amend his complaint, so as to make it conform to the findings of fact in the case. To this the defendant *Martin* objected, and alleges it as error in this court.

*G. Stevens*, for the appellant, contended, *inter alia*, that the trial court erred in receiving or considering evidence of any contract other than the one set up in the original complaint, and in allowing the complaint to be amended after the findings were made, so as to conform to the facts found. The claim of the plaintiff was that on June 8, 1888, Mr. Blossom, acting by Emery as his agent, entered into a written contract for the sale of the land; and the complaint did not show that any other fact was or would be relied upon or proved. And yet the plaintiff recovered upon an entirely different contract. *Shernecker v. Thein*, 11 Wis. 556; *Button v. Schuyler's S. T. B. Line*, 40 Hun, 422; *Johnson v. Filkington*, 39 Wis. 62; *Lewark v. Carter*, 117 Ind. 206; *King v. McKellar*, 94 N. Y. 317; *Nichols v. Larkin*, 79 Mo. 264; *Hanes v. D. & S. E. R. Co.* 40 Ohio St. 95; *Barrett v. Wheeler*, 66 Iowa, 560; *Niagara Co. Nat. Bank v. Lord*, 33 Hun, 557. Emery had no authority to execute the written contract. The trial court correctly found that Emery & Shults were the agents of Blossom for

the purpose of getting offers for the land and reporting the same to him. That was the extent of their authority. *Hamer v. Sharp*, 44 L. J. Ch. 53; *S. C.* L. R. 19 Eq. 108; *Armstrong v. Lowe*, 76 Cal. 616; *Duffy v. Hobson*, 40 id. 240; *Milne v. Kleb*, 44 N. J. Eq. 378; *Stewart v. Pickering*, 73 Iowa, 652; *Stillman v. Fitzgerald*, 37 Minn. 186. The letter of March 21 did not amount to an offer to sell, which the plaintiff could accept. It was merely private instruction by a principal to his agent. *Haydock v. Stow*, 40 N. Y. 363; *Stewart v. Pickering*, 73 Iowa, 652; *Stillman v. Fitzgerald*, 37 Minn. 186. If it be said that Blossom had ratified what Emery as his agent had done, that could only bind the interest of Blossom himself. Blossom had no power to delegate to any other person the authority he had to act for his sisters. Chitty on Cont. (11th Am. ed.), 296 and note; Parsons on Cont. 82, 83. And there is nothing in any part of the case which professes to bind the interest of either of those sisters.

For the respondent there was a brief by *Grotophorst, Remington & Buckley*, attorneys, and *Olin & Butler*, of counsel, and oral argument by *J. M. Olin*. They argued, among other things: (1) The agents of Blossom had authority to execute the written contract set out in the complaint. The agent who is authorized " to sell " is authorized, not merely to get offers for his principal, but to close a binding bargain for the conveyance of real estate. Mechem, Agency, sec. 321; *Farnham v. Thompson*, 34 Minn. 330; *Johnson v. Dodge*, 17 Ill. 433, 440; *Peabody v. Hoard*, 46 id. 242, 245; *Watson v. Sherman*, 84 id. 263, 267; *Jackson v. Badger*, 35 Minn. 52; *Pringle v. Spaulding*, 53 Barb. 17; *Haydock v. Stow*, 40 N. Y. 363; *Lyon v. Pollock*, 99 U. S. 668; *Matthews v. Sowle*, 12 Neb. 398; *Hopwood v. Corbin*, 63 Iowa, 218. (2) The letter of March 21 contained an offer which, when accepted, bound Blossom. *Hollis v. Burgess*, 37 Kan. 487. (3) There was a valid contract which

could be specifically enforced, independent of the written contract set out in the complaint. (4) There was a ratification of the acts of the real estate agents. To this point counsel cited, besides the cases referred to in the opinion, *Pratt v. Putnam*, 13 Mass. 361; *Brigham v. Peters*, 1 Gray, 139; *Nichols, Shepard & Co. v. Shaffer*, 63 Mich. 599; *Pitts v. Shubert*, 11 La. 286, 30 Am. Dec. 718; *Lorie v. N. C. C. R. Co*. 32 Fed. Rep. 270; *Cairnes v. Bleecker*, 12 Johns. 300. (5) The acts of the real estate agents were binding not only upon Blossom but upon his two sisters. Ratification by Blossom of the sale by Emery was binding upon Blossom's co-owners; for Blossom himself had authority to make such sale, and the legal effect of ratification of an act is to make it the act of the person ratifying. The authority to employ a sub-agent passed to Blossom in this case by implication. Mechem, Agency, secs. 193, 194, 196; Story, Agency, sec. 210; *Bodine v. Exchange F. Ins. Co.* 51 N. Y. 117; *Renwick v. Bancroft*, 56 Iowa, 527; *Saveland v. Green*, 40 Wis. 432; *Dorchester Bank v. N. E. Bank*, 1 Cush. 177. (6) It was not error to allow the complaint to be amended so as to conform to the facts proven. *Schumaker v. Hoeveler*, 22 Wis. 43; *Gill v. Rice*, 13 id. 549; *Giffert v. West*, 33 id. 621; *Schieffelin v. Whipple*, 10 id. 81; *Pope v. Allis*, 115 U. S. 363; *Patterson v. Keystone Mining Co.* 30 Cal. 360; *Carson v. Railsback*, 3 Wash. 168; *Riggs v. Chapin*, 7 N. Y. Supp. 765; *Abernathy v. Seagle*, 98 N. C. 553; *Engel v. Hardt*, 56 Wis. 456.

TAYLOR, J. The contention of the learned counsel for the appellant is that upon the whole evidence there was no binding contract of sale made by the Blossoms to the said plaintiff before and at the time the defendant *Martin* purchased said lands from them, and that he is not, therefore, bound in equity to convey said lands to the said plaintiff on the payment of the balance due on his alleged contract

with said Blossom, viz., $400, as adjudged by the circuit court. The learned counsel for the respondent have made a very able argument upon the evidence to establish the proposition of law that there is evidence sufficient in the case to show that the said Emery & Shults were agents of the Blossoms, with full power to make a binding written contract of sale of said lands, and especially to make such binding contract of sale at the price or prices fixed by the said W. L. Blossom. We think, after a careful consideration of the case and the findings of the court, that that question is not in the case to be determined on this appeal. The learned circuit judge has found as a fact that W. L. Blossom did not confer any such power upon the said Emery & Shults; that they were his agents for the purpose of negotiating as to a sale of the said lands, authorized to get offers for said lands and report the same to said Blossom; and he also finds that the written contract, made June 8, 1888, neither added anything to, nor took anything away from, the binding force of the contract which the learned judge finds was made by the other evidence in the case. As there were no exceptions taken to these findings by the plaintiff, they are conclusive upon him upon this appeal. The learned circuit judge based his judgment upon the ground that the evidence established a contract for the sale of said lands to the plaintiff, irrespective of the written contract made June 8, 1888, and we think we must either affirm or reverse the judgment upon that view of the case.

After a careful consideration of the evidence in the case, we conclude that the findings of the learned circuit judge are sustained by the law and the facts. We think it could not be successfully controverted that if W. L. Blossom, the acknowledged agent of the Blossoms, had personally made the same contract with the plaintiff which the said Emery & Shults made with him, he would have been bound in equity to make a conveyance of said lands to said plaint-

iff. This court, as well as nearly all other courts, has held that equity will enforce a verbal contract for the sale of real estate when there has been a part performance of such contract on the part of the vendee. And our statute, after declaring the nullity of such verbal contracts, expressly provides that nothing in the statute shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements. See 1 S. & B. Ann. Stats. sec. 2305. What is such a part performance of a verbal contract as will take it out of the statute and will justify a court of equity in decreeing a specific performance of such contract, has been frequently considered by this court, and it is held that the payment of any considerable part of the purchase money, and entering into the possession of the purchased premises and making improvements thereon, are sufficient to take the case out of the statute and justify the enforcement of the contract. *Bowen v. Warner,* 1 Pin. 600; *Blanchard v. McDougall,* 6 Wis. 167; *District No. 3 v. Macloon,* 4 Wis. 79; *Fisher v. Moolick,* 13 Wis. 321; *Ingles v. Patterson,* 36 Wis. 373; *Smith v. Finch,* 8 Wis. 245; *Cameron v. Austin,* 65 Wis. 652; *Seaman v. Aschermann,* 51 Wis. 678, 682. We think the evidence in this case clearly brings the plaintiff within the rule laid down in the above-cited cases, and the only other question in the case is whether W. L. Blossom, the acknowledged agent of the owners of said lands, should be held bound by the contract made by Emery & Shults with the plaintiff.

Admitting, as the court finds, that Emery & Shults had originally no authority to bind Blossom by a contract to sell said lands to the plaintiff, has Blossom so conducted himself in regard to the contract made by Emery & Shults with the plaintiff as to estop him from now repudiating such contract? In other words, has he ratified said contract and made it his own? In determining this question,

we are bound to give weight to the fact that the said Emery & Shults were not entire strangers in their relations to said Blossom, or in their relations to the lands in question. The proofs show that Blossom had employed them to procure purchasers for said lands, and this fact was made known to the public generally. What the extent of their authority was, was not definitely stated or known. The plaintiff dealt with these agents, supposing they had authority to sell said lands to him. At most, there was an excess of authority on the part of the agents in making the contract in question. Under such circumstances, we think the law is clear that when the person for whom such agents have undertaken to act is fully notified of what they have done, it becomes the duty of the principal either to affirm or disaffirm the act of the supposed agent within a reasonable time after such notice, or he is bound by such act. In the case at bar the evidence is clear that Blossom was notified at least two months before he sold the lands to the said *Martin* of the contract made by Emery & Shults with the plaintiff, and that plaintiff had taken possession of the property under such contract, and that he claimed the right to enforce such contract against the Blossoms, and that after the receipt of this notice Blossom did not in any way notify said plaintiff that he would not perform the same, and afterwards conveyed the lands to the said *Martin* without any notice to the plaintiff that he repudiated the contract made with the plaintiff. Under the authorities, we think Blossom is estopped now from denying the authority of the said Emery & Shults to make said contract, and has bound himself to its performance to the same extent that he would have been bound had he made such verbal contract with the plaintiff in person. The following cases in this court fully sustain the conclusion we have arrived at on this point: *Ladd v. Hildebrant*, 27 Wis. 135; *Saveland v. Green*, 40 Wis. 431, 438; *Kercheval v. Doty*, 31 Wis. 493; *Hadfield*

*v. Skelton*, 69 Wis. 460, 463, 464. Upon this point, see, also, *Foster v. Rockwell*, 104 Mass. 167, and *Ward v. Williams*, 26 Ill. 447, 79 Am. Dec. 385, and other cases cited in the brief of the learned counsel for the respondent.

It is urged by the learned counsel for the appellant that the circuit court erred in allowing the plaintiff to amend his complaint so as to make it conform to the evidence. We think this is a matter resting entirely in the discretion of the trial court, and, unless there is a clear abuse of such discretion, this court will not interfere. In this case it is not very clear that the evidence introduced on the trial was not properly admissible under the original complaint.

The other objection made, that W. L. Blossom could not delegate his power as agent of his co-tenants to the said Emery & Shults, is not in the case in the view taken of it by the trial court. The trial court enforced the contract against the grantee of the Blossoms, on the ground that Blossom, their authorized agent, had made a valid contract to convey the same to the plaintiff; and, the proof showing clearly that their grantee, *Martin*, took the conveyance from the Blossoms with full knowledge of the fact that such previous contract of sale had been made, he was also bound by such contract as between himself and the plaintiff.

*By the Court.*—The judgment of the circuit court is affirmed.