SENGER and wife, Respondents, vs. MALLOY and another, imp., Appellants.

*March 15—April 8, 1913.*

*Agency: Unauthorized acts: Ratification: Receipt of payments on mortgage.*

1. When an agent acts in excess of the authority conferred upon him, and the person for whom he has undertaken to act is fully notified of what has been done, it becomes the duty of the latter either to affirm or disaffirm the act of the supposed agent within a reasonable time after such notice or he is bound by such act.

2. A loan broker, authorized only to collect interest on a note and mortgage which he had sold, received partial payments of the principal but did not account therefor to the owner. After the broker's death the owner discovered the facts but did not, until six or eight months later, notify the mortgagors that the broker had no right to collect the principal and that he would look to them for the amounts so paid. He also made demand of the broker's administrator for the amounts so collected, and for a considerable time accepted from such administrator payments of interest on said amounts. *Held,* that he thereby elected to ratify the acts of the broker in receiving the payments on the principal.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

The plaintiffs brought this action to have a mortgage for $1,600 judicially declared to be paid and satisfied and to have their title adjudged to be free and clear of such mortgage. The defendants and appellants answered denying that the mortgage was paid, and interposed a cross-complaint for the foreclosure of the mortgage, alleging that there was $700 due thereon. Prior to July 2, 1906, one Charles Trzebiatowski, who for the sake of brevity will hereafter be referred to as Charles, was engaged in the loan business, and on that day loaned to the plaintiffs $1,600 for a period of three years at five per cent. interest, taking the note and mortgage in the name of his brother *Albert.* The loan was evidenced by a note secured by the mortgage in suit. In August, 1906, Charles sold this note and mortgage to *Nora C. Malloy,* one of the defendants herein. Her codefendant, *M. J. Malloy,* acted as her agent in the transaction and the note and mortgage were delivered to *Miss Malloy.* The note was made payable at the office of Charles. The plaintiffs made the following payments of principal on the note to Charles: January 3, 1907, $250; July 3, 1907, $300; January 4, 1908, $150. None of these sums were turned over to *Miss Malloy* or her brother. Charles died in March, 1908. Shortly after his death his brother *Albert Trzebiatowski,* who will hereafter be referred to as *Albert,* was appointed administrator of Charles's estate, and continued the business individually and in partnership with one *Joseph Bejma.* After the death of Charles, *M. J. Malloy* was called in to examine his books and accounts and then for the first time discovered that any part of the principal had been paid by the plaintiffs to Charles. The interest, however, had been collected semi-annually by Charles and the amount thereof paid by him to *Miss Malloy.* The court in its opinion says that *M. J. Malloy* immediately requested *Albert* to pay over the money, and there is evidence

to this effect.   After the death of Charles the plaintiffs con-
tinued to make payments to *Albert* on the principal as fol-
lows: July 1, 1908, $100; January 2, 1909, $200; June 30,
1909, $200; January 3, 1910, $200.   On July 5, 1910, the
sum of $100 was paid to *Joseph Bejma,* and on January 7,
1911, a payment of $100 was made to *Malloy.   Albert* made
the following payments to *M. J. Malloy:* July 19, 1909,
$500; May 26, 1910, $200; July 11, 1910, $100.   After the
death of Charles, *Albert* continued to collect interest from the
plaintiffs on the balance that would be due on the note if all
payments made on account thereof had been indorsed thereon.
*Albert* paid the semi-annual interest on the entire amount due
on the note, making up the difference between the amount
paid by the plaintiffs and the amount actually due to *Miss
Malloy.*   These interest payments were apparently accepted
and received with knowledge on the part of *M. J. Malloy* that
part of the interest was being paid by *Albert.*   Before suit
was commenced the defendant *Nora C. Malloy* assigned the
note and mortgage in question to her codefendant, *M. J. Mal-
loy.*   The circuit court held that *Malloy* ratified the acts of
Charles and became estopped from denying his authority to
accept the payments.   From a judgment entered in plaint-
iffs' favor the defendants *M. J. Malloy* and *Nora C. Malloy*
appeal.

For the appellants there was a brief by *Carpenter & Poss,*
and oral argument by *Paul D. Carpenter.*

For the respondents *Senger* there was a brief by *Rubin &
Zabel,* attorneys, and *W. B. Rubin* and *A. W. Foster,* of
counsel, and oral argument by *Mr. Foster* and *Mr. H. B.
Walmsley.*

BARNES, J.   For the sake of brevity the two Trzebiatow-
skis will be referred to by their Christian names.   Charles
was authorized to collect the interest on the note in suit, but
not the principal.   When *Malloy* learned what had been done

he might have disaffirmed the acts of Charles and looked to
the plaintiffs for the full amount of the note, or he might
have elected to affirm and ratify such acts and treat the estate
of Charles as his debtor for the amount of the principal col-
lected. It was six or eight months after *Malloy* knew that
the payments had been made to Charles before he advised the
plaintiffs that he would look to them for the amount so paid.
*Malloy* knew that the plaintiffs paid the interest to Charles
during his lifetime and continued to pay it to *Albert* after
Charles's death. He was in *Albert's* office on one occasion
when plaintiffs made a payment on the principal to *Albert*
and did not then make any objection, except to tell *Albert*
that he should not have demanded the money. He received
three separate payments on principal from *Albert*. He also
received from him interest paid by plaintiffs on the $900
which they admitted to be due. *Albert* paid out of his own
funds or out of the proceeds of the estate of Charles the in-
terest on the $700 collected by Charles, when such interest
became due under the terms of the note. *Malloy* demanded
of *Albert* payment of the amounts which Charles had col-
lected, according to *Albert's* evidence, which the court finds
to be true in the opinion rendered in the case. Such demand
could only be made on the theory that *Malloy* chose to con-
sider the estate of Charles his debtor for the moneys collected.
Interest on the amounts collected by Charles could only be
demanded of *Albert* on the same theory. We have (1) the
fact that *Malloy* did not advise the plaintiffs that Charles
had no right to collect the principal on the note until six or
eight months after he knew that the collections had been
made; (2) the fact that a demand was made on *Albert,* who
was the administrator of his brother's estate, for the amount
of principal collected by Charles; (3) the fact that for a con-
siderable period of time interest was collected semi-annually
from *Albert* on the $700 principal which Charles had col-
lected. These facts in connection with other less persuasive
ones heretofore referred to warranted the court in finding

that *Malloy* elected to ratify the acts of Charles in receiving payments on the principal.

When an agent acts in excess of the authority conferred upon him, and the person for whom he has undertaken to act is fully notified of what has been done, it becomes the duty of the principal to either affirm or disaffirm the act of the supposed agent within a reasonable time after such notice or he is bound by such act. *McWhinne v. Martin,* 77 Wis. 182, 187, 46 N. W. 118; *Saveland v. Green,* 40 Wis. 431; *Gold M. Co. v. National Bank,* 96 U. S. 640. Numerous other cases to the same effect will be found cited in 31 Cyc. 1275, and 40 Cent. Dig. tit. Principal and Agent, § 641.

The receipt of interest payments from the administrator of Charles's estate might well show ratification in itself. 31 Cyc. 1265; *Very v. Levy,* 13 How. 345. Reinforced as it is by the other significant facts referred to, the trial court's decision is well supported by the evidence.

*By the Court.*—Judgment affirmed.