PAPENTHIEN, Appellant, vs. COERPER and wife, Respondents.

*March 13—June 3, 1924.*

*Homestead: Liberal construction of statute: Frauds, statute of: Option to repurchase: Conveyance of property pursuant to oral contract: Failure of purchaser's wife to sign option: Specific performance: When purchaser able to perform: Necessity of mortgaging property acquired.*

1. The homestead law of this state will be liberally construed to effectuate its design.  p. 159.

2. A written option to repurchase a duplex house sold by plaintiff to the defendant husband and wife, executed by the husband the day after the deed was executed, under a preceding oral contract to convey, with option to repurchase, being manifestly executed to reduce a part of the oral contract to writing, should be construed as contemporaneous with the deed, and the two should be read together; and the entire agreement, being thus made while the property was plaintiff's and before it became defendants' homestead, sec. 2203, Stats., requiring the wife's signature to a contract to alienate the homestead, was inapplicable, and the signature of the husband, who was authorized by the wife to act for her, bound both.  p. 163.

3. The oral contract of sale and option to repurchase is an entire contract, so that its complete performance by plaintiff is such a part performance as to take the reconveyance agreement out of the statute of frauds.  p. 161.

4. Where there has been part performance of a contract void under the statute of frauds, so that repudiation would operate as a fraud on the other party, the contract will be enforced in equity.  p. 161.

5. The option to repurchase constituted a limitation on the title acquired, which title could not be enlarged by the purchaser using the premises as a homestead.  p. 162.

6. Where the purpose of a deed, a unilateral contract, is simply to convey title and it does not purport to contain all the terms of an oral contract pursuant to which it is given, parol evidence is admissible to prove such contract.  p. 162.

7. A purchaser is pecuniarily able to complete the purchase, so as to be entitled to specific performance, if he has so arranged that the money will be forthcoming when the deed is passed to him, though a part of the money is to come from one who at the same moment receives from him a mortgage on the property bought.  p. 163.

APPEAL from a judgment of the circuit court for Milwaukee county: FRED BEGLINGER, Judge. *Reversed.*

Specific performance. On and prior to April 1, 1920, the plaintiff was the owner of a duplex flat building, in which she resided, in the city of Milwaukee. Her husband was indebted to the defendant *Raymond E. Coerper* in the sum of about $2,800. *Coerper* was pressing for payment. This led to negotiations between *Coerper* and the plaintiff, which culminated in the following oral agreement on April 1, 1920: Plaintiff agreed to convey the flat building to the defendants. The defendants agreed to cancel the indebtedness which *Coerper* held against plaintiff's husband, amounting to $2,800, pay the plaintiff about $1,400 in cash, and assume a mortgage upon the building in the sum of $3,800, making in all the sum of $8,000. It was further agreed that at any time within two and one-half years the plaintiff might repurchase the premises by paying therefor the sum of $8,000; that the plaintiff might continue to occupy the upper flat during the period between the delivery of her deed to the defendants and until she exercised her option to repurchase, paying as rent the sum of $38 per month; that after the repurchase by plaintiff, the defendants should remain in possession of the lower flat for two and one-half years as tenants of plaintiff and pay her $38 per month rent therefor. It was also agreed that on the sale of the property to defendants one of the parties should pay the expense of extending an abstract of title to the property which plaintiff then had down to the time of the purchase, and that upon the resale of the property to plaintiff the other party should bear the expense of extending the abstract of title down to the time of the resale so as to enable each party to ascertain the condition of the title. All the negotiations leading up to said oral agreement were had between the plaintiff and the defendant *Raymond H. Coerper* personally, and the defendant *Lillie H. Coerper* took little or no part therein, but she authorized her husband, *Raymond E. Coerper,* to carry on said negotiations on her behalf as well as his own,

and authorized him to consent to any conditions, agreements, or stipulations he deemed necessary or advisable to effectuate the purchase of said property for both of the defendants. Said *Lillie H. Coerper* was informed by her husband during the course of said negotiations that he would have to agree to resell said property to plaintiff within a stated time, to which she assented. It was understood between the parties that the defendants would move into the lower flat and occupy it as their homestead, as soon as convenient, after they obtained title to the property. They did move in during the month of June.

Pursuant to and for the purpose of carrying out this oral agreement the plaintiff did, on the 20th day of April, convey title to said premises to the defendants by warranty deed. On the 21st day of April *Raymond E. Coerper* executed and delivered to the plaintiff a written option to repurchase said premises for the sum of $8,000, the option to terminate October 20, 1922, at 12 o'clock noon. The wife, *Lillie H. Coerper,* did not sign said written option and never agreed, or consented in writing to any agreement or option, to sell or resell said premises. Prior to October 10, 1922, the plaintiff, both orally and in writing, informed the defendant *Raymond E. Coerper* that she elected to repurchase said premises. Defendants refused to reconvey, and this action was brought to enforce specific performance of the agreement.

The trial court found all the foregoing facts, and that the plaintiff was ready, able, and willing to pay the $8,000, the agreed amount of the repurchase price, but concluded that the option agreement was unenforceable because it related to premises occupied by the defendants as a homestead, and *Mrs. Coerper,* the wife, had never assented in writing to such option agreement. Judgment was entered dismissing plaintiff's complaint, from which judgment plaintiff appealed.

For the appellant there was a brief by *Michael Levin,*

attorney, and *Ben J. Wiener,* of counsel, both of Milwaukee, and oral argument by *Mr. Levin.*

For the respondents there was a brief by *Walter F. Mayer,* attorney, and *Vincent D. Hennessey,* of counsel for respondent *Raymond E. Coerper,* both of Milwaukee, and oral argument by *Mr. Mayer.*

The following opinion was filed April 8, 1924:

OWEN, J. Sec. 2203, Stats., declares every agreement by a married man to alienate his homestead or any interest therein to be void unless the wife's consent thereto is evidenced by her act of joining in the deed, mortgage, or other conveyance. The homestead law will be liberally construed to effectuate its design. *Zimmer v. Pauley,* 51 Wis. 282, 8 N. W. 219. It has been held that

"The *bona fide* intention of acquiring the premises for a homestead, without defrauding any one, evidenced by overt acts in fitting them to become such, followed by actual occupancy in a reasonable time, must be held to give to the premises answering the description prescribed in the statute the character of a homestead; and the homestead exemption thus secured covers not only the land, but such materials so used thereon, and relates back to the time of purchase with such intent to make the premises a homestead." *Scofield v. Hopkins,* 61 Wis. 370, 375, 21 N. W. 259. See, also, *State Bank of Waupun v. Storm,* 169 Wis. 295, 172 N. W. 151.

In *Rosenthal v. Pleck,* 166 Wis. 598, 166 N. W. 445, it was held that

"A contract in which the wife did not join, to convey lands including a homestead, is void *in toto,* cannot be specifically enforced or be reformed so as to release therefrom the homestead right, and cannot be made the basis of an action for damages."

The trial court concluded that these principles were applicable in this case and prevented the enforcement of plaintiff's right to repurchase the premises. In arriving at this

conclusion the trial court predicated the right of the plaintiff to repurchase the premises upon the written option executed April 21st, one day after the conveyance by the plaintiff to the defendants was executed; that the premises took the character of the defendants' homestead immediately upon the delivery of the deed; and that the option signed by the defendant husband the following day was void because not signed by the wife. If plaintiff's right to repurchase the premises be predicated upon an option or agreement made after the premises became the homestead of the defendants, the principles to which we have alluded no doubt compel the conclusion reached by the trial court. But in so predicating the plaintiff's right to repurchase the premises the trial court fell into error. Her right to repurchase the premises springs from the original oral agreement entered into on the 1st day of April. By that agreement plaintiff agreed to convey the premises to the defendants. Defendants agreed to convey said premises back to the plaintiff, at her option, at any time within two and one-half years after her conveyance to them. This oral agreement also provided that plaintiff should occupy the upper flat, paying therefor the monthly rental of $38 during said period of two and one-half years. It was also agreed that if plaintiff repurchased the premises at the end of two and one-half years, defendants should be permitted to occupy the lower flat for an additional period of two and one-half years, paying the plaintiff a monthly rental of $38 therefor. It was further agreed that one party should pay the expense of bringing the abstract down to date upon the conveyance by plaintiff to the defendants, and the other party should pay a like expense upon the reconveyance by the defendants to the plaintiff. This oral agreement was no doubt void under the statute of frauds. If nothing further had been done under or pursuant to such agreement neither party could have enforced any part of it. However, to carry out the

agreement on her part the plaintiff did, on the 20th day of April, convey the premises to the defendants by her warranty deed. The defendants moved into the lower flat as per agreement. Plaintiff continued to occupy the upper flat and paid therefor the stipulated monthly rental of $38. She also paid for the continuation of the abstract, all pursuant to the oral agreement. That this was an entire contract would seem to be plain. It has been held that a sale of corporate stock, accompanied by an oral agreement on the part of the vendor to repurchase the same, constituted an entire contract, and that the delivery thereof constituted such a part performance of the entire contract as to take the oral agreement to repurchase out of the statute of frauds. *Vohland v. Gelhaar,* 136 Wis. 75, 116 N. W. 869; *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430. We see no reason why the principle of these cases is not applicable to the oral agreement here under consideration.

We have, therefore, the oral agreement of April 1st fully and completely performed by the plaintiff. This takes it out of the statute of frauds. The refusal on the part of the defendants to reconvey the premises to her in accordance with said original agreement will work a fraud upon her. While the court made no specific finding upon the question, the record contains evidence to the effect that $8,000 was a very low price for the premises, and it seems quite probable that plaintiff was induced to convey the premises for that amount because of the option accorded her to repurchase the same. It is the settled law of this state that where there has been part performance of a contract void under the statute of frauds, so that it will operate as a fraud upon the other party to repudiate it, the contract will be enforced in equity. The following are some of the cases so holding: *Daniels v. Lewis,* 16 Wis. 140; *Paine v. Wilcox,* 16 Wis. 202; *Martineau v. May,* 18 Wis. 54; *Seaman v. Aschermann,* 51 Wis. 678, 8 N. W. 818; *McWhinne v. Martin,* 77

Wis. 182, 46 N. W. 118; *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 48, 56 N. W. 367; *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 962.

It will thus be seen that the agreement upon which plaintiff's right to repurchase is predicated was made before the defendants acquired title to the premises and before they had acquired any interest or homestead rights therein. It constituted a condition imposed upon and limiting the nature of the title which they took to the premises. The title which they acquired to the premises was at all times subject to the right of the plaintiff to repurchase. They might have impressed such title to the premises as they had acquired with the character of a homestead, but by using such premises as a homestead they could not enlarge the nature of their title.

Leaving out of consideration the option agreement of April 21st, the oral contract of April 1st was not merged in any written contract so as to render parol proof thereof inadmissible. The deed was a unilateral contract. Its purpose was merely to convey title to the premises. It did not purport to contain all of the oral agreement. The evidence relating to other features of the oral agreement in no way contradicts the terms of the deed. Under such circumstances it is well settled that parol evidence is admissible to prove the oral contract. *Hahn v. Doolittle,* 18 Wis. 196; *Jost v. Wolf,* 130 Wis. 37, 110 N. W. 232; *Agnew v. Baldwin,* 136 Wis. 263, 116 N. W. 641; *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430.

But the option agreement of April 21st was manifestly executed for the purpose of reducing a part of the oral agreement to writing. Although it was executed one day after the execution of the deed, it should be construed as a writing contemporaneous with the deed, and they should be read together. As so construed, we have the complete agreement between the parties, so far as present issues are concerned, reduced to writing. For reasons already stated, this agreement did not require the signature of the wife.

At that time the premises were the property of the plaintiff. They had not become the homestead of the defendants. As a condition, and at the very moment of parting with title, the plaintiff acquired the right of repurchase. The signature of the husband, who was authorized to act for the wife in the transaction, bound both defendants to the option. In no view of the transaction do we see any difficulty in enforcing the terms of the option.

The respondents claim that specific performance should not have been decreed because it does not appear that plaintiff was financially able to pay $8,000 for the premises. Upon this question the court found that the plaintiff was ready, able, and willing to comply with the agreement of repurchase on her part. We discover no exception to this finding, and the respondents are bound thereby. However, we think the finding is justified. It does appear that it would have been necessary for the plaintiff to raise a part of the purchase price on the property itself. This fact, however, does not militate against the finding. It has been held by this court that it is not necessary for a purchaser to have the cash in his pocket in order to justify a finding that he is able to pay the purchase price. He is pecuniarily able to complete the purchase if he has so arranged that the money will be forthcoming at the moment the deed is passed to him, although a part of such money is to come from one who at the same moment receives a mortgage from such purchaser. *McCabe v. Jones,* 141 Wis. 540, 124 N. W. 486. It seems plain that plaintiff was entitled to a decree of specific performance in accordance with the prayer of her complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff in accordance with the prayer of the complaint.

A motion for a rehearing was denied, with $25 costs, on June 3, 1924.