## FERY VS. PFEIFFER, impleaded with others.

A complaint alleged that the plaintiff, C., entered upon certain lands of the defendant J. F., under an agreement between them which they caused to be reduced to writing, and which was set forth in the complaint in *haec verba*, and was a lease to the plaintiff of said lands for six years. The complaint also alleged that duplicates of said lease were drawn at the request of the parties; that one of them, executed by plaintiff, was delivered to the defendant; that the other was left by plaintiff with the defendant for him to execute, which he promised to do; that plaintiff went into possession of the premises and occupied them for more than one year under said agreement, rendering to the defendant his share of the crops &c. as provided therein; that he performed certain work and was at certain expense in clearing the land and making rails for fencing the same, which would make it more valuable to him in the remaining years of the term mentioned in said lease, and which he would not have performed if he had not expected to occupy the land under the lease for the whole of said term; that afterwards the defendant J. F. returned said duplicate lease unexecuted, and refused to execute it, and had conveyed the land to one H., who had conveyed it to the defendant A. F., wife of said J. F., both which conveyances were without consideration, and were taken by the grantees therein with knowledge of the plaintiff's rights: and that A. F. threatened to dispossess the plaintiff of the premises. Prayer, that J. F. be adjudged to execute said lease, and that A. F. be restrained from interfering with the premises. On the trial, the allegations of the complaint relative to the oral agreement and written lease were proven, except that the name of the lessee as found in the lease, was N. instead of C.; but it appeared that the defendant had never called plaintiff's attention to the fact, nor objected to executing the instrument on that ground. The allegations as to the plaintiff's possession of the premises were also proven. *Held,*

1. That it was error for the court, after ruling out the lease offered in evidence by the plaintiff, on account of such variance in the name of the lessee, to refuse

leave to amend the complaint by alleging that the name N. was written in the lease by mistake for C., and adding a prayer for the reformation of the instrument.

2. That it was too late for the defendant J. F. to object to an action to compel the execution by him of the lease when so reformed, on the ground that he had not been requested to execute it in that form before the action was brought. If he refused to sign it on that ground, he should have said so at the time.

3. That the conveyances to H. and A. F. having been made while the plaintiff was in possession of the premises, the grantees therein were bound to take notice of his rights.

4. That even if this were not so, yet A. F., having failed to answer, must be regarded as having admitted the allegations that she and her grantor took without paying any consideration and with notice of the plaintiff's rights; and J. F. could not object to a judgment against himself for a specific performance of his oral agreement, on the ground that those allegations were unproved.

APPEAL from the Circuit Court for *Washington* County.

This action was brought in February, 1863, by *Claude Fery* against *John, Matthias* and *Adelheide Pfeiffer.* The complaint alleges that on the 1st of October, 1861, *John Pfeiffer* and the plaintiff entered into an agreement or lease which they caused to be reduced to writing; and what purports to be a copy of said lease is set forth in the complaint. By its terms, as thus set forth, said *John Pfeiffer* lets to said *Claude Fery,* for six years from October 1, 1861, eighty acres of land therein described, " consisting of twenty acres of woods, besides five acres of woods destined for cultivation, and the remainder of clearing." *Fery,* on his part, promises to occupy and cultivate the land; to remove from the fields such stumps and stones as may be loosened by the plow and harrow, and on new land such stones as are already loose or shall be made loose; to deliver to the lessor one half of the products of the farm, including one half of the annual increase of cattle, &c. The lessor agrees, on his part, to furnish one half the seed; to furnish one laborer to aid in breaking out stones on the new land, and fencing the twenty acres of woodland; **to** deliver to the lessee for his use certain farming implements, horses, cattle, swine, &c. It is also provided that the lessee shall use as much of the hay, oats, corn and other feed as may be necessary for feeding the cattle and fat-

tening the swine on the farm, and only the remainder shall be subject to equal division between the parties; and that the lessee shall have the whole crop from the five acres of woodland above mentioned for the first year after he shall have cleared, fenced and cultivated the same. The other provisions of the lease need not be stated here. The lease as set forth is executed only by the plaintiff, and is witnessed by one Mullenmeister. The complaint alleges that it was drawn up in duplicate by said Mullenmeister at the request of *John Pfeiffer;* that both duplicates were executed by the plaintiff, and it was understood and agreed that said *John Pfeiffer* should execute them at once; that one of them was by Mullenmeister delivered to plaintiff and the other to said *John,* and the latter not being present at the time of the execution by the plaintiff, he, said plaintiff, immediately thereafter delivered his duplicate to said *John* to sign and execute, which he agreed to do; and that said *John* retained the same in his possession for a long time, and plaintiff supposed he had executed it. The complaint further alleges that on the 1st of October, 1861, the plaintiff, under and by virtue of said agreement, took possession of the premises, and of the implements, live stock, &c., with the consent of the defendant *John Pfeiffer;* that he occupied and used the same, cultivated the lands, raised one crop thereon, and delivered to said *John* his share thereof, which he received and appropriated under said agreement; that he continued for one year to occupy and use said land, implements, stock &c.; that he still continues to occupy the premises under the agreement, and has complied with all the conditions thereof on his part; that he has chopped and partly prepared said five acres of wood land by him to be cleared, and will be entitled to the crop therefrom during the next year following the completion of said clearing; that he has made about two thousand rails for fencing the twenty acres of wood land, and has removed stones and stumps from the cleared land as required by the agreement, and has spent a large amount of la-

bor and time in that work and in clearing the said five acres of wood land, in consequence of which the premises are much more valuable for cultivation than before; and that he would not have performed such extra labor if he had not expected to occupy the premises for the full term mentioned in said lease. The complaint further alleges that in September, 1862, plaintiff sowed four acres of winter wheat, which is now growing on the premises, one half of which, when harvested and threshed, would belong to him by the terms of said lease. It further alleges that said *John Pfeiffer* permitted the plaintiff to do all the things above stated under said agreement, and then returned said written lease to the plaintiff without executing it, and refused to execute it or further to comply with his part of the agreement. It alleges also that the defendant *Matthias Pfeiffer*, confederating with said *John Pfeiffer*, his father, to injure the plaintiff and drive him from the premises, and deprive him of the use of the personal property mentioned in the agreement, and prevent him from further performing said agreement, in November, 1862, without plaintiff's consent, took away from the premises all the farming implements and live stock mentioned in the agreement. It further alleges that in October, 1862, said *John Pfeiffer* and *Adelheide Pfeiffer*, his wife, conveyed said premises to one Hein; that Hein afterwards conveyed the premises to said *Adelheide*, and that both conveyances were made without any consideration, the parties confederating to enable *John Pfeiffer* to avoid his agreement with plaintiff; and that said *Adelheide* threatens to dispossess the plaintiff of the premises. Prayer, that *John Pfeiffer* be adjudged to perform his said agreement and execute said lease; that *Matthias Pfeiffer* be adjudged to return to the plaintiff all the farming implements and live stock so by him unlawfully taken from the plaintiff; that *Adelheide Pfeiffer* be restrained from interfering with the premises during the term mentioned in said lease; and for general relief.

*Matthias* and *Adelheide Pfeiffer* made default. *John Pfeiffer*

answered, denying that he ever " entered into an agreement or lease with the plaintiff, alleged and set forth in the complaint," or that he " entered into any written lease or contract whatever leasing said premises to the plaintiff as in his complaint alleged ;" that he ever " agreed to sign said duplicate, which is alleged to have been drawn by said Mullenmeister, set forth in the complaint;" that the plaintiff " ever entered into and took possession of the said premises under said agreement alleged and set forth in the complaint, or that he took possession of the personal property under the same," &c., &c. The answer also denies some of the allegations of the complaint as to the amount of work done on the premises by the plaintiff, and denies that the premises were conveyed by *John* and *Adelheide Pfeiffer* to Hein without consideration.

On the trial, all the important allegations of the complaint as against the defendant *John Pfeiffer*, were proven or were admitted by said defendant, except that it was claimed by him that in the original agreement the name of the party of the second part was written " Nicolaus Fery " and not *Claude Fery* ; but it was not claimed that he had ever called the plaintiff's attention to that fact, or assigned that as a reason for refusing to execute the instrument. The plaintiff then offered in evidence one of the duplicates, signed by himself, but its admission was objected to on the ground that it purported to be a contract between *John Pfeiffer* and " Nicolaus Fery,'' and also on the ground that " the contract was not such an one as a court of equity would lend its aid to enforce, or decree a specific performance of ;" and the objections were sustained. The plaintiff then asked leave to amend his complaint by inserting an averment the substance of which was, that the name of Nicolaus Fery was inserted by the draughtsman in said lease by mistake for that of *Claud Fery* ; and also by inserting a prayer that said lease might be corrected by substituting the name *Claud* for Nicolaus. The defendant objected, on the grounds that the amendment, if allowed, would be of no avail to the plaintiff in

this action, and that the evidence showed a refusal by said defendant to execute the contract offered in evidence, and not any other contract. The objections were sustained. The plaintiff having rested, the defendant moved to dismiss the complaint on the ground of an entire failure of proof to sustain it, and also on the ground of a variance between the averments of the complaint and the proof offered to sustain it. The motion was granted, and a judgment was rendered accordingly, from which the plaintiff appealed.

*Frisby & Weil*, for appellant.

*Thorp, Shelley & Frisby*, for respondent:

1. *John Pfeiffer* never refused to make a contract between himself and *Claud Fery*, but one between himself and Nicolaus Fery, and hence was in no default. 2. The fact that *Adelheide Pfeiffer* owned the land before and at the time of the commencement of the action, is positively alleged in the complaint, and no proof whatever was offered to show any fraud on her part or want of consideration in either of the conveyances above referred to. Consequently she is the owner of the premises, and *John Pfeiffer* is not legally competent to perform the contract, and in such case the court will not decree that he should. 2 Sch. & Lef., 554; 1 Swanst., 55; 16 Pick., 357; 2 Parsons on Con., 562; *Malden v. Fyson*, 9 Beav., 347. 3. *Adelheide Pfeiffer* never having appeared or answered in the action, the appellant, to entitle himself to the relief demanded, must have proven all the material facts alleged in the complaint. Hence the case was properly dismissed for want of such proof. In actions in equity, where there is no appearance by the defendant, the plaintiff must prove all the material facts alleged as to such defendant. Sec. 27, ch. 132, R. S. 4. The appellant has a plain and ample remedy at law. He can recover the value of all the services performed on the land. 13 Wis., 154. It is only where the legal remedy is inadequate or defective that it becomes necessary for courts of equity to interfere. *Flint v. Brandon*, 8 Vesey, 163.

*By the Court,* DIXON, C. J.  If the complaint was defective in not averring that the name Nicolaus Fery, instead of *Claud Fery*, was inserted by mistake of the draftsman in the original draft of the lease, certainly the amendment proposed by the plaintiff should have been allowed.  There is nothing so nice or technical in a complaint for specific performance, as to take it out of the operation of the statute of amendments, or to deprive the court of power to relieve the plaintiff from the mistake or omission of his counsel.  The chief point of objection, as we understand it, is, that it would be requiring the defendant to execute a different contract from that set forth in the complaint and from that originally presented to him for his signature.  As to the first branch of the objection, if sustained, it would be equally fatal to almost every proposed amendment of a complaint, and show that in no case should such amendment be allowed.  For the object of such amendments almost always is, to change the cause of action as set forth in the complaint in some particular or particulars.  If such proposed change defeats the application, then the statute is useless.  Such is not the inquiry upon applications of the kind.  It is, whether the defendant has been misled to his prejudice in maintaining his defense.  It is so obvious here that he was not, as hardly to admit of comment.  His answer, from beginning to end, is framed upon the idea of standing upon this variance.  He knew, then, very well what lease he was called upon to execute, and could not be taken by surprise.

As to the other branch of the objection, that the lease to be executed must be identical with that originally prepared for his signature, that being to Nicolaus instead of *Claud Fery*, it is too late for the defendant to take advantage of it.  If he refused to sign it on that ground, he should have said so at the time.  The mistake, had it then been discovered to the plaintiff, would undoubtedly have at once been corrected.  The defendant could not lie by, keep the secret, put the plaintiff in possession and keep him in upwards of a year, faithfully per-

forming and relying upon the lease, and then for the first time bring up this objection for the purpose of defeating the lease altogether. Such conduct savors very strongly of fraud, and a court of equity can stand upon no such narrow and untenable ground. Besides, it appears that the mistake was made by a scrivener of the defendant's own choice. He employed him, and dictated the terms of the lease in every respect.

Upon the merits, the case presents no new principle, or new application of any old principle, of equity jurisprudence. Upon the pleadings and proofs, so far as they are in, it is full of equity. It may be sustained under the head of specific performance, or fraud, or both, for specific performance is often decreed because of fraud.

The objection that it is unproved that the conveyances from the defendant to Hein and from Hein to *Adelheide Pfeiffer* were without consideration, and made with full knowledge by the grantees of the existence of the lease and subject to it, is without foundation. *Adelheide Pfeiffer* makes no answer, and thus confesses the truth of the allegation. If she admits it, it is a matter of no interest to the defendant *John Pfeiffer*, whether it is true or not. But if this were not so, the plaintiff was in possession at the time of the execution of those conveyances, and the grantees were bound to take notice of his rights.

Judgment reversed, and cause remanded for further proceedings according to law.