SEAMAN vs. ASCHERMANN and another.

*March 24— April 19, 1881.*

SPECIFIC PERFORMANCE *of contracts within the Statute of Frauds.*

1. Equity will enforce specific performance of a contract within the statute of frauds, when there has been such a part performance that a refusal by one party to perform will operate as a fraud upon the other.
2. Thus, where defendants, by promising to accept and execute on their part a lease of certain stores from plaintiff for five years, induced plaintiff to break off pending negotiations for renting such stores to a third person, and to materially alter their structure in order to adapt them to defendants' use, and entered into and held full possession of such stores for two years, paying rent therefor according to said agreement, but neglected (without refusing) during that time to execute on their part the lease executed by plaintiff and tendered to them when they took possession, and at the expiration of the two years refused to execute such lease or continue to occupy and pay rent according to its terms: *Held,* that they should be adjudged to execute the lease.

APPEAL from the Circuit Court for *Milwaukee* County.

The substance of the complaint is thus stated by Mr. Justice ORTON:

"The complaint is for the specific performance of a verbal contract, made by the defendants with the plaintiff, to accept from the plaintiff and execute on their part a written lease of a part of lot 1 in block 15, and a block of five stores thereon, in the city of Milwaukee, for the term of five years from May 1, 1878, at the annual rent of $3,000, payable each year in certain installments. The following facts are substantially stated: Some time previous to the first day of May, 1878, the defendants proposed to the plaintiff that if she would refrain from renting a large portion of said block of stores to another firm, and break off pending negotiations therefor, and materially alter and change the structure of said stores, and make them suitable for their business, they would accept and execute on their part such lease. The plaintiff accepted such proposition, and suspended negotiations for such other renting, and made such alterations and changes, and adapted the stores to the purposes required, at great expense; and the defendants, before the said first day of May, 1878, entered into the full possession, use and occupancy of said premises under such agreement, and continued to so occupy and enjoy the same until the first day of May, 1880, and paid the rents according to said agreement and said lease so agreed to be made. At the time the defendants so entered into possession, the plaintiff made out and executed on her part said written lease, and tendered the same to the defendants to be executed on their part and accepted, but they neglected to do so, by mere delay, until the month of April, 1880, when they removed from said premises and notified the plaintiff that they would not pay rent therefor after the following first day of May. The plaintiff then again tendered to the defendants said written lease, and demanded its execution and acceptance, which was refused, and she is still ready and willing to execute said lease on her part."

A general demurrer to the complaint was sustained; and plaintiff appealed from the order.

For the appellant there was a brief by *Flanders & Bottum*, and oral argument by *Mr. Flanders*.

For the respondents there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler*.

ORTON, J.    The facts stated in the complaint make a clear case of a verbal agreement to execute a five-years' lease, fully performed by the plaintiff, and partly performed by the defendants.    The only question presented is, Can this verbal agreement, under these circumstances, be enforced?    Aside from the above facts of performance, it is conceded that the agreement is void by the statute of frauds, and can neither be enforced in equity or damages recovered for its breach in a court of law.    That this agreement for or as a lease for five years, even under the circumstances stated in the complaint, is so invalid under the statute that the rents reserved thereby, or damages for the breach of the same, could not be recovered in an action at law, is perfectly well settled.    Story's Eq. Jur., § 757.    It is only in a court of equity, if at all, that relief can be obtained, and that for specific performance, if performance is possible.    The general principle by which courts of equity grant specific performance of parol contracts for the sale of lands or interests in lands, is clearly stated by Mr. Justice Story, in his great work on Equity Jurisprudence: " That they do, however, interfere in some cases within the reach of the statute, is equally certain.    But they do so, not upon any notion of any right to dispense with it, but for the purpose of administering equities subservient to its true objects, or collateral to it and independent of it."    Story's Eq. Jur., § 754.

The same learned author lays down more strictly the ground of equitable interference in such cases, as follows: " Courts of equity will enforce a specific performance of a contract within the statute, where the parol agreement has been partly carried

into execution. The distinct ground upon which courts of equity interfere in cases of this sort is, that otherwise one party would be able to practice a *fraud* upon the other, and it could never be the intention of the statute to enable any party to commit such a fraud with impunity." And again: " Where one party has executed his part of the agreement in the confidence that the other party would do the same, it is obvious that, if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice." Id., § 759.

In *Potter v. Jacobs*, 111 Mass., 32, these principles were applied to the facts of that case and relief granted, and Mr. Justice Colt states the doctrine as follows: "The plaintiffs acted under their supposed rights as purchasers of the property. What they did was consistent with the agreement proved, and can be referred to no other title or claim of title. They were induced to enter upon the execution of the agreement, *and to do acts upon the faith of it, as if it had been executed*, with the knowledge and acquiescence of the defendant, for which there would be no redress if the agreement was defeated. There was possession taken, accompanied by part payment, and such change of position that the purchasers cannot be restored to their rights if the contract be abandoned. The refusal to complete it is in the nature of a *fraud*, and the defendant is estopped to set up the statute of frauds in defense." To this expression of this true ground of equity relief are cited *Glass v. Hulbert*, 102 Mass., 24; Fry on Spec. Perf., § 534; Adams' Eq., 86.

In *Paine v. Wilcox*, 16 Wis., 202, this court has laid down the same doctrine, as follows: " But verbal agreements for the sale of lands are enforced in equity when there has been such a part performance that it would operate as a fraud upon either party to allow the other to repudiate."

The cases in this court in which this principle has been applied to parol agreements for the sale and conveyance of land,

are too numerous to be cited, and the doctrine is too well settled to require further argument or authorities to sustain it. That the same doctrine is applicable to a parol agreement to execute a written lease, was held in *Fery v. Pfeiffer*, 18 Wis., 510. The following cases cited by the learned counsel of the appellant are clearly analogous and in point: *Nunn v. Fabian*, Law Rep., 1 Ch. App., 35; *Dowell v. Dew*, 1 Younge & Coll. N. C., 356; *Wills v. Stradling*, 3 Ves. Jr., 378; *McCarger v. Rood*, 47 Cal., 141; Wait's Actions and Defenses, 770, 777, 790, and cases cited; *Rankin v. Lay*, 2 De G., Fish. & Jones, 65. See, also, *Frame v. Dawson*, 14 Ves. Jr., 386. It is self-evident that this equitable relief must be mutual. If there has been sufficient execution or performance of the parol contract to entitle the lessee to enforce it, the lessor has the same equity, and both will be equally entitled to specific performance. It is said in *Dowell v. Dew, supra*, that Mrs. Bernhard, who had agreed to execute the lease, " at the time of her death *was in a condition to have enforced the performance of the agreement in equity against him* [the tenant] *by reason of that part performance.*" In support of this general doctrine of equity, it may be said here, as was said by Chief Justice DIXON in *Brandeis v. Neustadtl*, 13 Wis., 152, that our own statute (now found in section 2303, R. S.) saves the jurisdiction of the court " to compel the specific performance of agreements in cases of part performance of such agreements."

We are aware that in a very few of the states this doctrine is not upheld, but in England and in most of the states it is now undisputed. The facts stated in this complaint make one of the strongest and clearest cases for its application to be found in the books. The plaintiff was put to great expense to change and remodel the block of stores to make them suitable for the business of the defendants, and at their special instance and request, and in consequence and fulfillment of the agreement, and made out and executed and tendered the lease to the

defendants for them to execute on their part; and the defendants went into full possession and enjoyment of the premises under said agreement, and for two years paid the plaintiff the rents stipulated in the agreement and the lease to be executed, and merely delayed, by sheer neglect and without refusal, to execute the lease on their part. A stronger case for the exercise of this equity jurisdiction could hardly be made. The complaint stated a good cause of action, and the demurrer should have been overruled.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.