## 10729

### WORKMAN *ET AL.* v. COPELAND *ET AL.*

(108 S. E. 922)

1. SPECIFIC PERFORMANCE—EQUITY WILL NOT DECREE EXECUTION OF A WRITTEN LEASE IN ABSENCE OF CONTRACT FOR ONE.—Where there was no agreement for a written lease, equity will not require the execution of one.

2. SPECIFIC PERFORMANCE—PAROL LEASE FOR FIVE YEARS VOID AND UNENFORCEABLE.—Under the statutes a parol lease for five years is void, and unenforceable in equity.

Before MOORE, J. Laurens, November, 1920. Affirmed.

Action by W. H. Workman and Workman Co. against J. W. Copeland, Sr., and D. E. Tribble Co. Judgment for defendants and plaintiffs appeal.

### Report of Referee

The above stated case was referred to me as Special Master and the reference was held at Laurens, South Carolina, September 9, 1920, at which was taken the testimony herewith reported.

At the conclusion of plaintiff's testimony the defendants made a motion to dismiss the complaint for a failure of proof to establish any cause of action stated therein. This motion was fully argued before me at the hearing.

For the purpose of the motion not only must the testimony of plaintiffs be taken as true, but all inferences to be drawn from the facts testified to on behalf of plaintiffs must be solved in their favor. For the purpose of this motion therefor I find as a fact that Mr. Workman entered into a contract with Mr. Copeland as agent for the Copeland Company for the purchase of stock of merchandise for the price mentioned in the testimony, and also at the same time that he entered into a contract with Mr. Copeland individually for the lease of these buildings for a period of five years; but that that lease was a parol lease for a longer period than one year. I find also that the lease of those buildings was an inducement to Mr. Workman's entering into this contract, and that under the testimony if it had not been for the fact that he thought he would get possession of the buildings for five years that he would not have purchased the stock of goods. Now, those being the facts and that being the agreement, the question is: can it as a matter of law be enforced? The first objection to the enforcement of that agreement is that Sec. 3502 of the Code provides that no parol lease shall give a tenant a right of possession for a longer term than twelve months from the time of en-

tering. In that connection it appears, and 'it is admitted, that the plaintiff does not claim the right to remain in possession under the lease which Copeland Company had, but claims his right under the agreement with Mr. Copeland, which has been referred to, and claims the right to stay in possession for five years. The Supreme Court has held in construing this Section that a parol lease for a longer term than one year is void, and that at the expiration of the year that the tenancy becomes a tenancy at will unless the parties by their conduct treat it as a tenancy from year to year. It appears from the testimony in this case conclusively that the lessor elected to treat his as a tenancy at will and it seems to me that under this Section that this lease at the expiration of one year terminated, and the contract for five years' lease is void under this Section.

The next proposition contended for by defendants is that the lease is void under Sections 3735 and 3737 of the Code as to the Statute of Frauds for the reason that it is not in writing. As to this plaintiffs' position is that the contract for the purchase of the goods and for the lease of the property was an entire contract and that it would be inequitable to require the plaintiffs to take the stock of goods and not require the defendant to execute a lease for the five years. The testimony shows that in selling the stock of goods Mr. Copeland was acting as agent for Copeland Company, a corporation, and that in making the lease he was acting for himself individually. Under these circumstances I can not see how there can be an entire contract, where there were two separate contracts made by two separate entities which had no legal connection with each other.

The plaintiffs also contend that this lease should be taken out of the operation of the Statute of Frauds on account of part performance. As to this I hold the mere possession alone is not sufficient for this purpose; and even

if it were, the possession in this case is referable to the valid portion of the contract by which the plaintiffs became entitled to the premises for a period of one year. I do not think that the payment of rent operates to take the case out of the Statute for the reason that the rent was paid at the end of each month and not at the beginning of the term. In other words, if at the time Mr. Copeland made this lease with the plaintiff for five years he had been paid the rental in advance for the term, then it would obviously be a fraud upon plaintiff to claim that the lease was invalid; but I do not think this principle applies where the rent is not paid in advance but is only paid at the end of each month the store is occupied.

The defendant also contends that this lease can not be enforced because, even if it could be held valid as a parol lease, there is no written assignment of the lease. The testimony shows that the contract was made by Mr. Workman with Mr. Copeland for five years—a verbal contract; that afterwards it was assigned by parol to Stanton & Johnson, who undertook to carry on the business as a partnership, and that thereafter the business was incorporated as Workman & Company, by whom it is still carried on. Workman & Company must therefore claim their right to the possession under the original lease to Mr. Workman and by successive transfers to them, and there is no evidence of any of these transfers being in writing.

It seems to me that Workman & Company would have to establish their legal right to possession, and in order to do this it would be necessary not only to show an original valid lease but an assignment to them which complied with the provisions of Section 3736 of the Code, and for this reason also I do not think the action can be maintained.

It is my opinion, therefore that the action can not be maintained for the three reasons stated and that the de-

fendant's motion to dismiss should be granted, and I recommend that the complaint in this action be dismissed.

Respectfully submitted,

E. M. BLYTHE,

October 11, 1920. Special Master.

## DECREE OF JUDGE MOORE.

This action was commenced on the —— day of March, 1920, by the above named plaintiffs against the said defendants for the specific performance of an alleged verbal contract for the leasing for the term of five years of two store rooms, Nos. three and five, in the building, situated in the town of Clinton, in said County and State, belonging at the time to the defendant, J. W. Copeland, and made by the said J. W. Copeland to the said W. H. Workman.

The defendants answered the complaint, setting up a general denial and pleading the Statute of Frauds. See Sections 3736 and 3737, and also the Landlord and Tenants Act, known as Sec. 3502 of the Code of 1912, Vol. 1.

The cause was referred to E. M. Blythe, Esqr., as Special Referee, who held a reference and after introduction of the plaintiff's testimony, upon defendant's motion, granted an order dismissing the action for want of sufficient proof, without taking any testimony on behalf of defendants.

The plaintiff filed exceptions to this report, and the cause came on to be heard before me at the November term of the Court upon the report of the Referee and the exceptions thereto.

The case is one of considerable importance, not only on account of the interest of the parties, but because of its novel impression, the exact points presented not having yet been decided in this State.

The Referee substantially found that the testimony on behalf of plaintiff was to the effect,—

1st. That on Februray 20th, 1919, the defendant, J. W. Copeland, acting as the executive head of the J. W. Cope-

land Company, a corporation, negotiated a sale of the stock of merchandise belonging to the said The J. W. Copeland Company at the price of $11,009.11, and delivered the same to the defendant, W. H. Workman, who paid the said purchase money, and at the same time the said J. W. Copeland agreed to lease the said store rooms to the said W. H. Workman for the term of five years from the 20th of February, 1919, at the monthly rental of $41.66 per month to be paid at the end of each month thereafter.

2nd. That when the said stock of goods were delivered the said W. H. Workman took possession of the store rooms in which the goods were found and conducted the said business as successor of the J. W. Copeland Company and paid the monthly rent at the end of each month until February 20th, 1920, when the defendants, D. E. Tribble & Company, gave notice that the monthly rental would be raised to $75.00 per month, and that the tenancy would be one at will of the defendants.

3rd. That the plaintiff, W. H. Workman, would not have purchased the said stock of goods unless he had thought that J. W. Copeland would lease him the store rooms for the term of five years, in which to conduct the said mercantile business, and that the said W. H. Workman by parol assigned the said lease and the stock of goods to the partnership known as Stanton & Johnson, and that subsequently Stanton & Johnson by parol assigned the said lease and stock of goods to the Workman Company, a corporation.

As a matter of law, the Referee held that:

1st. The alleged lease being verbal, Sec. 3502 of Vol. 1 of the Code declares all such leases shall give the tenant no right of possession after expiration of twelve months from time of entry upon the premises, and after said time the estate of the tenant is one at will only.

2nd. That under Sections 3736 and 3737 of Vol. 1 of the Code no action could be brought upon a parol contract

for any interest in lands, nor could any action be maintained upon any lease assigned by parol to the claimant.

3rd. That the lease in this instance lying only in parol and assigned to W. H. Workman Company by parol, the facts proven in the case were not sufficient as part performance to take the case out of the operation of the Statute of Frauds; that the contracts for the sale of the goods and for the lease were separate and distinct contracts and not interdependent; that J. W. Copeland acted in a dual capacity in selling the goods of the J. W. Copeland Company and in leasing the store rooms, and that the intention of W. H. Workman to obtain a lease for five years was an inducement or motive of the latter's action for purchasing the stock of goods, but that the same was a collateral matter, not forming a part of the contract for the sale and purchase of the stock of goods, and that the acts of part performance are not solely referable to the alleged lease for five years.

In addition to what the Referee has so well said, it is further to be noted that, assuming the truth of the testimony that J. W. Copeland promised to lease the store rooms for the term of five years, still it does not clearly and unequivocally appear from the testimony that W. H. Workman did promise to take and lease the stores and pay the rent thereon for the term of five years; on the contract, the inference that he did not so agree is borne out by the fact that W. H. Workman was taking the initiative in the whole matter, in order to set up his two nephews, Stanton & Johnson, in the mercantile business, and there is no evidence of a binding agreement by plaintiffs, or Workman, or Stanton & Johnson to become lessees of the premises for any specified term. There is, therefore, want of mutuality of contract. W. H. Workman could have vacated the stores at any time and upon so doing was immune from suit for the recovery of the rent for the remainder of the supposed five years term, and after he transferred the stock of goods to his

assigness, J. W. Copeland had no remedy by way of distress for rent in arrears. There was, therefore, want of mutuality of remedy for the collection of the rent. *Fleming v. Riegel,* 90 S. C., 190; *Cabeen v. Gordon,* 1. Hills Chan., 56; *Campbell v. V. C. Co.,* 68 S. C., 440; *Davis v. Pollock,* 36 S. C., 544; *Hellams v. Patton,* 44 S. C., 454.

So far as concerns the matter of alleged part performance of the contract, the test is that the acts of part performance must be solely referable to the alleged verbal contract for the term in question. The price paid for the goods was reasonable and possession of the stores and monthly rental paid at the end of the month are referable to the legal lease for the term of one year from the time of entry, and these acts afford no basis for a claim of part performance of a parol contract for lease for five years. *Crawford v. Crawford,* 77 S. C.; *Poag v. Sandifer,* 5 Rich. Eq., 36 Cyc. 662.

The ground of equitable interference by way of enforcement of parol contracts which have been partly performed is that the lessor or vendor would work a fraud upon the lessee or purchaser by ejecting him from the premises after the purchase or rental money had been paid and after improvements had been made upon the property. In the case at law there is no claim that improvements were made by the lessee upon the leased property, nor was there any payment upon the lease except for the time occupied up to February 20th, 1920. If the plaintiffs should be ejected from the premises as tenants at will after said date, they would have lost nothing, having obtained the stock of goods at a fair price and having enjoyed the use and occupation of the rooms at a fair rental for the period of twelve months from the time of entry, which was a legal term under the law, and the only legal terms by way of a parol lease.

In the case of *Koch v. As.,* 137 Ill., 297, and *Jennings v. Miller,* 48 Or., 201, and *Decenbach v. Rima,* 77 Pac.

391, which were cases of parol leases, the Court refused specific performance. In the case of *Wallace v. Scroggings,* 18 Or., 502, relied upon by the plaintiffs, substantial improvements were made upon the property leased during the term of the alleged parol lease.

In this and other States, the Courts, in case of parol contracts for the purchase of land, have generally held that payment of the purchase money, possession and substantial improvements were sufficient to take the case out of the Statute of Frauds, for the reason that the vendor would be stopped and would perpetuate a fraud upon the vendee, if the vendor should eject the vendee from the premises after he had taken possession of the land, paid the purchase money and made substantial improvements thereon. 3 Pom. Jur., Section 1409; *Mims v. Chandler,* 21 S. C., 480; *Boozer v. Teague,* 27 S. C., 363; *Martin v. Patterson,* 27 S. C., 321; *Hunter v. Mills,* 29 S. C., 17; *Peay v. Seigler,* 48 S. C., 496.

It is true that there are some cases in our own Courts which do not mention the elements of improvements, but in those cases the purchaser had possession for considerable time and cultivated the lands, and specific performance was granted upon the payment of the purchase money and the possession of the lands because the acts performance could be referred to no other contract than that of an absolute purchase. *Rapley v. Klugh,* 40 S. C., 134; *Watts v. Witt,* 28 S. C., 356; *Sweetman v. Edwards,* 28 S. C., 68; *Robert v. Smith,* 21 S. C., 455.

But in case of parol leases for a longer term than twelve months from time of entry, the greater reason and that weight of authority in this State, and elsewhere, is that the party seeking specific performance must clearly prove the possession under parol contract, the payment of the stipulated rent and the erection of improvements commensurate with the term of the parol lease, in order to obtain the aid of equity in enforcing a parol lease for a longer term than one year.

Furthermore, the plaintiffs cannot recover against the defendant, J. W. Copeland, for the reason that he conveyed the premises in question to his co-defendants on February 20th, 1920, before the commencement of this action. For the reasons stated above, the plaintiffs cannot obtain specific performance against D. E. Tribble & Company, since they are *bona fide* purchasers of the premises from J. W. Copeland, without notice of the equities claimed. It is true that W. H. Workman notified D. E. Tribble before the execution of the conveyance in general terms that he had a five-year lease on the store rooms in question, but such alleged lease not being in writing and no notice or knowledge being had by defendants, D. E. Tribble or D. E. Tribble & Company, of the alleged acts of part performance, these defendants had the right to rely upon the Statute declaring such naked parol lease for more than one year void and unenforceable. W. H. Workman did not give D. E. Tribble any information as to the elements of his alleged parol lease nor the equities of his claim for the term of five years. W. H. Workman was the original source of the information and Tribble was not required to seek information from any other source, and had the right to rely upon the law that parol leases for a longer term than twelve months from time of entry created a tenancy at will only and gave the tenant no right of possession after that time: 2 pom. Eq.; Sec. 754.

Wherefore, it is considered by the Court, ordered, decreed and adjudged that the exceptions to the report of the Referee be overruled, and that the said report be confirmed and the complaint dismissed with costs.

ERNEST MOORE,

December 11, 1920.　　　　　　　Presiding Judge.

*Messrs. Simpson, Cooper & Babb,* for appellants, cite: *Equitable contract*: 3 Story Eq. Jur. (1887) Sec. 1294. *If consideration is valuable it need not be adequate*: 1 Parsons Conts. (7th Ed.) 489. *Valuable consideration de-*

*fined*: 25 A. S. R. 533; Anson Conts. 63; Pollock Conts. 166; 13 C. J. 324, Sec. 163. *Benefit to a third person is sufficient consideration for a promise*: 13 C. J. 325, Sec. 164; 104 S. C. 218; 9 S. C. L. 366; 5 Crouch 150, 3 L. Ed. 63. *May consist of acts to be done*: 162 N. C. 276; 9 A. S. R. 422. *Verbal contract of lease may be specifically enforced if there has been part performance*: 3 Pom. Eq. Jur., Sec. 1409; 17 A. S. R. 749; 44 S. C. 460; 39 Hun. 382; 21 S. C. 480; 1 Rich. Eq. 130; 24 S. C. 190; 46 L. R. A. (N. S.) 659; 49 L. R. A. (N. S.) 113. *Grantees liable to perform contract of their grantor*: 11 L. R. A. (N. S.) 1183; 23 L. R. A. (N. S.) 982.

*Messrs. A. C. Todd* and *F P. McGowan*, for respondents, cite: *Specific performance cannot be decreed unless contract is established by certain and definite testimony*: 25 R. C. L. 218; 3 Elliott Conts. 468; 77 S. C. 205; 94 S. C. 62; 154 U. S. 610; 22 L. Ed. 562; 149 U. S. 315, 37 L. Ed. 749; 29 S. C. 598; 49 L. R. A. note 116, 117; 109 S. C. 255. *And founded upon a reasonable, adequate, valuable consideration*: 25 R. C. L. 207; 3 Elliott Conts. 482, 483; 2 Strob. Eq. 76. *No enforcement of contract lacking in mutuality, either of obligation or remedy*: 18 Ore. 502; Fry Spec. Perf. (3rd Ed.) 440; 10 Wall 339, 19 L. Ed. 955; 55 S. E. 300. *No specific performance in S. C. of parol lease on ground of part performance*: 25 R. C. L. 567; 49 L. R. A. (N. S.) 113; 24 S. C. 195; 1 Civ. Code 1912, Sec. 3502; 60 S. C. 373; 35 S. C. 584. *After one year from expiration of tenancy, tenant holds either at will or from year to year*: 66 S. C. 162; 90 S. C. 58. *Specific performance will not be decreed of an illegal contract*: 25 R. C. L. 210; 3 Elliott Conts., Secs. 2308, 487-8. *Acts that do not constitute part performance*: Pom. Eq. Jur. 1409; 7 Rich. Eq. 378; 49 L. R. A. 113 (note). *Possession to constitute a part performance must be under the contract*: 77 S. C. 205; 77 S. C. 511; 49 L. R. A. (N. S.) 117; 85

Pac. 517 (Ore.); Brown Stat. of Frauds, (5th Ed.) 457; Pom. Spec. Perf. Sec. 109; Bail. Eq. 118; 9 Rich. Eq. 215; 1 Rich Eq. 130; McMull Eq. 181; 5 Rich Eq. 181; 29 S. C. 559; 27 S. C. 348; 138 U. S. 587; 78 Pac. 666; Later case than 21 Pac. 558, 17 Am. St. Rep. 749 36 Cyc. 659; 3 L. R. A. (N. S.) 790; 8 Am. Dec. 672. *Acts relating to purely collateral matter do not suffice as basis of part performance*: Brown Stat. Frauds, Pom. Spec. Perf. Sec. 109; 85 Pac. 519; 10 L. R. A. 763; 83 Pac. 322; L. R. A. 1915 A, 292; 4 Pom. Eq., Sec. 1409; 36 Cyc. 679; 25 R. C. L. 260. *Tribble & Co. are innocent purchasers for value and as against them there can be no specific performance*: 1 Civ. Code 1912, Sec. 3500.

October 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

In the view that this Court takes of this case, very few words are necessary to determine it. The Copeland Company were conducting a mercantile business at Clinton, S. C. The stores occupied by the company were the individual property of the defendant J. W. Copeland, who was the president and the person who conducted the negotiations between the parties. The plaintiffs claim that by a parol agreement W. H. Workman, on behalf of himself and others, bought the stock of goods and made a lease of the storehouses for a period of five years. Before the end of the first year Mr. Copeland sold the storehouses to his codefendant. The codefendant denied the lease, and demanded increased rent after the expiration of a year. This suit was brought for specific performance.

Appellant's argument says:

"There is only one question, Was it error to refuse specific performance of this contract; it being one in parol to give a lease of buildings for a longer time than one year?"

16—S. C. 117

Due consideration will show clearly how impossible it is to grant the relief demanded. The plaintiff W. H. Workman in his testimony stated:

"It never occurred to me to have the lease put in writing till after he talked about selling. I did not know that a verbal lease for five years was not good till later on, when some of them claimed it was not good, when he began to talk about wanting the building."

1, 2    There being no agreement for a written lease, the Court cannot require Mr. Copeland to execute a written lease. The Courts may require a person to perform a contract he has made. There was no agreement for a written lease, and the Court is powerless to require one. It is equally clear that a parol lease for five years is void under the statutes, and the Court cannot enforce a parol contract that the statutes say is void.

There are other insuperable obstacles in the plaintiffs' way, but this is enough.

Let the report of the special referee and the decree of the trial Judge be reported.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Appeal from a decree of the Circuit Court, confirming the report of the special master, recommending that the motion of the defendants, made at the conclusion of the testimony for the plaintiffs, to dismiss the complaint, be granted. No testimony on behalf of the defendants was received.

The action is for the specific performance of an alleged parol agreement entered into between J. W. Copeland and W. H. Workman, on February 20, 1919, covering two storehouses in the town of Clinton for five years from that date at a rental of $500 per annum.

The testimony for the plaintiffs (which was alone before the Court) tended to establish the following facts:

A corporation known as the Copeland Company, of which the defendant J. W. Copeland was principal stockholder and manager, in the year 1919 was engaged (as it had been for several years) in an extensive mercantile business, occupying two storehouses in Clinton, which were the individual property of J. W. Copeland. They fronted on the principal street of the town, and occupied a most desirable location for business. In February of that year negotiations opened up between Copeland and Workman looking to a purchase by Workman of the hardware stock of goods in one of the stores. The trade was concluded by an agreement, all verbal, by which Copeland agreed to sell to Workman the stock of goods at 90 cents on the dollar, and to lease him the two stores at $500 per annum, for five years, as the special master finds:

"I find also that the lease of those buildings was an inducement to Mr. Workman's entering into this contract, and that under the testimony if it had not been for the fact that he thought he would get possession of the buildings for five years, he would not have purchased the stock of goods."

Workman did not want to take the smaller store, but upon Copeland's insistence agreed to do so; he is positive in his declaration that the location was extremely desirable, that there was no other available place open to him, and that, if he had not been able to secure the lease for five years, he would not have embarked in the business at all; that he was setting up two of his nephews in business and that the acquisition of a stock of goods, without a place of business, was a matter not to be thought of. An inventory of the stock was taken. Workman complied with the terms of the purchase, settling with Copeland in full, and was put into possession of both the stock of goods and the two stores; that he or the firm, or corporation subsequently or-

ganized paid the rent, $41.66 per month, regularly, until
February 19, 1920. In December, 1919, Copeland notified
Workman that his lease would expire on February 19, 1920.
Workman replied promptly that he had a verbal contract
with him for five years; that "this was the agreement when
we bought the stock of goods as a part of the sale." Cope-
land did not reply until February 12, 1920, repeating, with-
out reference to Workman's letter, his former statement as
to the expiration of the lease, and on the 21st, the day after
the year was up, notified Workman that he was a tenant at
will at $60 per month. On March 19, 1920, Copeland con-
veyed the two stores to the defendant Tribble Company.
The latter notified Workman on March 22, 1920, that
they had bought the stores, and demanded possession by
April 1st. They notified Workman that they wanted $75
per month for one store and $50 for the other, a mild in-
crease of $1,000 per annum over the rent previously paid
by Workman. Workman refused to give up possession or
to pay the increased rent. The defendant D. E. Tribble
Company was notified, before they complied with their
trade with Copeland for the stores, that Workman was
claiming possession under his verbal lease as stated.

After finding the facts practically as above, the special
master concluded: (1) That the parol lease in excess of
one year was void for the excess of one year, under Section
3502 of the Code; (2) that the parol lease was void under
the statute of frauds (Sections 3735-3737 of the Code: (3)
that in selling the stock of goods Copeland was acting for
the Copeland Company, and in making the lease he was act-
ing for himself individually; that the sale and lease could
not therefore constitute an entire contract, as there were
two separate contracts, made by two separate entities, hav-
ing no legal connection with each other; (4) that the parol
lease was not taken out of the statute of frauds by part per-
formance, for the reason that the possession by the lessee

was referable to that part of the contract which was valid, the lease for a year, and that the payment of the rent was made by the month and not by the year. He gives no reason for this distinction, or why it should not be considered as evidence of part performance, if in fact it was made upon the parol lease for five years; (5) that there was no written assignment of the lease to the partnership of Stanton & Johnson or to the corporation Workman Company, and that Workman Company, to establish their right to possession, must show, not only a lease originally valid, but an assignment thereof complying with Section 3736 of the Code.

The Circuit Judge in a decree of more amplified form confirmed the report of the special master upon the grounds above stated, which will form the basis of observations to follow, and from his decree the plaintiffs have appealed.

It is conceded that Copeland did make an oral agreement with Workman that he should have the occupation of the stores for five years at a rental for the two of $500 per annum. The testimony is all one way as to that fact, and the master so finds, to which the defendants have filed no exception. It is also conceded that in reliance upon that agreement, and upon the further agreement that Copeland would give him a lease, Workman took over one of the stores which he did not need, went into possession of the hardware stock and both houses, paid the purchase price of the goods in full, embarked in a mercantile venture of great risk, with two young men whom he was setting up in business (which he would not have done without the assurance of a suitable location), and regularly paid the rent called for by the agreement. For the purposes of this appeal (there having been a motion to dismiss granted before the defendant put up any testimony) these facts are taken for granted, as being admitted by the defendants.

The question is, Shall the defendant Copeland be permitted to repudiate his agreement, and under the cloak of

statutory protection perpetrate a gross wrong upon Workman? So far as I am concerned he shall not be, if there is any law in the land to prevent it.

There is no question but that under Section 3502 of the Code a parol lease for more than a year does not confer upon the lessee a right of possession for more than 12 months, and that all such leases shall be understood to be for one year only.

It is provided in Section 3735 that a parol lease for more than a year shall have the force and effect of an estate at will only.

Under Section 3737, no action can be brought upon a parol lease for any length of time, one year or less or more. *Davis v. Pollock,* 36 S. C. 544, 15 S. E. 718.

There seems to be a conflict between the provisions of Sections 3502 and 3735. In the former, a parol lease for more than a year creates a lease for a year; in the latter, an estate at will.

Notwithstanding the imperative terms· of inhibition contained in Section 3737, against the institution of an action upon a contract of the character there mentioned, not in writing, the Court of equity will allow it under circumstances which would amount to a fraud if denied. As is declared in 2 Story, Eq. (14th Ed.) p. 423:

"The distinct ground upon which Courts of equity interfere in cases of this sort is that otherwise one party would be enabled to practice a fraud upon the other; and it could never be the intention of the statute to enable any party to commit such a fraud with impunity. Indeed fraud in all cases constitutes an answer to the most solemn acts and conveyances; and the objects of the statute are promoted, instead of being obstructed, by such a jurisdiction for discovery and relief.

The ground on which Courts of equity proceed, in holding that part performance of a contract within the statute

of frauds takes the case out of the statute, is that it would amount to a fraud on the party who, in reliance on the contract and pursuant thereto, has partly performed it, to permit the other party to refuse performance on his part. The enforcement is made in harmony with the principle that Courts of equity will not allow the statute of frauds to be used as an instrument of fraud.   This being the basis of the doctrine, it follows that nothing can be regarded as a part performance, to take a verbal contract out of  the operation of the statute, which does not place the party in the situation which is a fraud upon him unless the contract be executed.   The partial performance must be such as would prevent the Court from restoring the promise to the situation in which he was when the agreement was made." 25 R. C. L. 259.

As Judge Story remarks:

"That they [the principles of equity] do, however, interfere in some cases within the reach of the statute, is equally certain. But they do so, not upon any notion of any right to dispense with it, but for the purpose of administering equities subservient to its true objects, or collateral to it and independent of it."

I can see no reason why Sections 3502 or 3735 should be invested with a sanctify not possessed by Section  3737, which would relieve them from the application of so just a rule.

As long as the parol contract stands in its original form, and the proceeding is one at law, Sections 3502 and 3735 have full force; but in equity they are subject to the same great rules for enforcing justice as prevail in and are the pride of a Court of equity.

In 25 R. C. L. 284, it is declared:

"The great weight of authority is to the effect that equity will intervene to protect the rights of one who by reason of part performance has taken an oral lease out of the statute of frauds."

"Thus if a tenant has entered into possession under an oral agreement for a lease and has paid rent, incurred expenses in improvements, and changed his circumstances and conditions, relying upon the oral agreement, to such an extent that a refusal on the part of the landlord to perform operates as a fraud on the tenant, there is such part performance as will take the case out of the statute of frauds, and authorize the Court to decree specific performance of the parol agreement." 25 R. C. L. 284; *Zelleken v. Lynch,* 80 Kan. 746, 104 Pac. 563; 46 L. R. A. (N. S.) 659; *Wallace v. Scoggins,* 18 Or. 502, 21 Pac. 558, 17 Am. St. Rep. 749.

"Some Courts have inclined to the view that there can be no part performance of an oral lease which will take it out of the statute. It is the geneal view, however, as in case of oral sales or contracts for the sale of land, that part performance under an oral lease or contract for a lease may be such as to take the transaction out of the operation of the statute. The usual ground on which Courts of equity interfere in case of oral leases as to which there has been part performance is that equity will not permit the statute to operate as an engine of fraud, or, in other words, that it will interfere for the purpose of preventing the injustice which would arise from permitting a party to escape from the obligations of his agreement, where the other party, on the faith of such agreement, has in presumptively good faith acted in execution thereof." 25 R. C. L. 567, citing *Halligan v. Frey,* 161 Iowa, 185, 141 N. W. 944, 49 L. R. A. (N. S.) 112; *Parkhurst v. Van Cortland,* 14 Johns. (N. Y.) 15, 7 Am. Dec. 427; *Wallace v. Scoggins,* 18 Or. 502, 21 Pac. 558, 17 Am. St. Rep. 749; *Seaman v. Aschermann,* 51 Wis. 678, 8 N. W. 818, 37 Am. Rep. 849.

In England it has been held that taking possession under the parol lease will of itself alone constitute the necessary part performance. This principle has been repudiated in

many States, and has not been adopted in South Carolina. It is conceded everywhere, however, that possession and valuable improvements will do so, upon the ground. that they amount to such an alteration in the lessee's position as will warrant the Court in entering a decree of specific performance. It follows upon the same reasoning that any acts, on the part of the lessee, which have the effect of so altering his circumstances and condition as to make it inequitable on the part of the lessor to insist upon the statute, will have the same effect. The impossibility of the lessee's retracing his steps in the case at bar really presents a stronger case for specific performance than if he had made improvements after taking possession, for the reason that the improvements might be compensated for in money, but his changed position could not be restored or compensated for.

In a note to 49 L. R. A. (N. S.) 113, it is said:

"The great weight of authority is to the effect that equity will intervene to protect the rights of one who has taken an oral lease out of the statute of frauds by part performance."

Cases supporting the text are cited from C. C. A., Arkansas, California, Connecticut, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, New York, Ohio, Oregon, Rhode Island, Texas, Virginia, Wisconsin, Canada, Ireland, and England.

It has also been held in a majority of cases that payment alone will not constitute part performance. But in those jurisdictions which uphold the doctrine of part performance it is held that possession and payment of rent under the contract do constitute part performance. Certainly it should follow that possession, payment of rent under contract, and the material alteration of the lessee's circumstances and condition will have that effect.

In a note to 17 Am. St. Rep. 756, Judge Freeman says: "It follows, as a necessary result of the decisions hereinbefore cited, that whether a lease is oral or written is not very material, if the lessee has entered into possession and paid rent under it, and can establish its terms to the satisfaction of the Court to which he resorts for the purpose of compelling specific performance. In other words, a lease may be regarded as a sale of a limited interest in real estate, and although, like a sale of the fee, it ought to be evidenced by some writing in substantial conformity to that exacted by the statute of frauds, it may, like a sale of the fee, be followed by acts constituting such part performance as to remove it from the operation of that statute, and entitle the lessee to compel the lessor to execute the appropriate evidence of the demise."

In *Seaman v. Aschermann,* 51 Wis. 678, 8 N. W. 818, 37 Am. Rep. 849, there was a verbal agreement by defendant (tenant) to lease the plaintiff's store for five years; the plaintiff (landlord) broke off negotiations with another prospective tenant, and went to some expense in altering the store for the defendant's accommodation; the defendant went into possession and paid rent for two years; he declined to execute the lease and plaintiff sued for specific performance. Held, that the landlord was entitled to the relief.

In *Eaton v. Whitaker,* 18 Conn. 222, 44 Am. Dec. 586, it was held that an agreement to lease land is within the statute of frauds, but that part performance will take it out of the statute; that delivery of possession, continued occupation, and payment of rent according to the terms of the agreement are a sufficient part performance for that purpose. The Court makes this significant observation:

"There are many cases where contracts for the absolute sale of the fee of lands have been decreed to be excuted, on the ground of part performance; and it would seem not a little remarkable, for a Court to hold, that a contract for a

three years' lease is, in this respect, in a worse condition than would be a sale of the land is perpetuity."

The point has not been suggested, and I am not to be understood as expressing a definite opinion upon it for the lack of time for investigation, but it is questionable whether the parol agreement under the circumstances is within the statute. The trade was an entire one, that the plaintiff should buy the stock of goods and the defendant Copeland should lease the store. The plaintiff's part of the contract was fully performed, and the defendant should be required to perform his. See *Gee v. Hicks,* Rich, Eq. Cas. 5; *Compton v. Martin,* 5 Rich. 14; *Hill v. Smith,* 12 Rich. 698.

That there was, according to these authorities, sufficient part performance by Workman to take the case out of the statute and to warrant a decree of specific performance I have not a doubt. Workman fully complied with his bargain; paid the purchase price of the stock of goods; went into possession of the stores under the contract; paid the rent every month; and, what is of the greatest consequence in my opinion, so altered his circumstances and condition, that it would be impossible to restore him thereto; he bought a stock of goods, had them on his hands with the burden of disposing of them at a profit, embarked upon a new and uncharted sea for him, with all the risks of storm and shipwreck, none of which he would have undertaken but for Copeland's agreement. To hold that at a time of inflated values and rent profiteering Copeland should be allowed to sell his property and the buyer to raise the rent from $500 to $1,500 a year, after the discovery that a verbal lease is good only for one year, is a conclusion to which I do not subscribe.

The argument that Copeland and his company were separate entities, and that for that reason the contracts were separate and distinct, suggests a conclusion that is in the teeth of the facts and has no support in the law. If

they were separate entities, I know of no principle of law or justice that would prevent a third party from being bound by his personal undertaking, upon the consideration of which one of the contracting parties assumed obligations to the other. Copeland was deeply interested personally in the corporation and in disposing of the stock of goods which belonged to it; I can see no reason why his personal obligations, which induced the trade with the corporation, should not be supported by the risk of loss which Workman assumed.

I think therefore that the decree should be reversed, and that the case should be recommitted to the special master to complete the testimony and make his report in conformity with the conclusions herein announced, which, however, should not be deemed decisive of the issues of fact in the case.